Anibal **MONTANEZ** a/k/a Ivan Montilla–Pena, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 10–02–00274–CR.

Court of Appeals of Texas, Waco.

Nov. 8, 2006.

David M. Cook, Lufkin, for appellant.

Clyde M. Herrington, Angelina County Dist. Atty., Lufkin, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

**OPINION ON REMAND**

FELIPE REYNA, Justice.

Anibal Montanez appeals the denial of a suppression motion in his prosecution for possession of more than 400 grams of cocaine. Montanez argues in his sole issue that the court abused its discretion by overruling the motion because: (1) there was no lawful basis for the stop of his vehicle; (2) his consent to search the vehicle was not freely and voluntarily given and; (3) alternatively, the search exceeded the scope of consent given. We will affirm.

On original submission, a majority of this Court held that the State failed to prove by clear and convincing evidence that Montanez freely and voluntarily consented to the search. *See Montanez v. State*, 143 S.W.3d 344, 348 (Tex.App.-Waco 2004). The Court of Criminal Appeals reversed and remanded because the majority "applied the incorrect standard of review." *Montanez v. State*, 195 S.W.3d 101, 109 (Tex.Crim.App.2006).

### Background

Investigator Jason Bridges of the Deep East Texas Regional Narcotics Task Force stopped Montanez's Nissan Pathfinder because his license plate was obscured and the license plate light was not working. The entire encounter was recorded on a videotape which was admitted at the suppression hearing.

Bridges explained the violations to Montanez and asked for his driver's license. Montanez provided a Massachusetts license, and Bridges asked where he was coming from. Montanez told Bridges he had been in Houston for four days visiting his uncle, friends, and his "primo." Montanez explained that he was returning home to Massachusetts. When Bridges asked about the Pathfinder, which had New Hampshire plates, Montanez said it belonged to a friend. Bridges "assumed that [Montanez] borrowed it." After speaking with Montanez for a few minutes, Bridges asked the passenger, Francisco Martinez, about the trip.

After talking with the two men, Bridges "felt like some type of illegal activity was occurring" because the Pathfinder was owned by an out-of-state third party, because Montanez and Martinez "were unsure" about the purpose for their trip, and because they did not know each other's names. Bridges asked for Montanez's consent to search the Pathfinder about eleven minutes after stopping Montanez. The videotape depicts the following exchange between Bridges and Montanez:

Bridges: Can I search?

Montanez: Excuse me?

Bridges: Can I search your vehicle?

Montanez: Repeat please?

Bridges: You understood everything else I asked you. Can I search your car? Can I look?

Montanez: Oh, yeah. No problem.

Bridges: Do you comprende?

Montanez: You check out the car?

Bridges: Si.

Montanez: Yeah, no problem.

Bridges: No problem? Do you comprende?

Montanez: Yeah.

Bridges: Okay. It's okay?

Montanez: Yeah.

Bridges: Okay.

Bridges noticed that "a brand-new, large duffle bag" in the Pathfinder contained nothing but neatly folded clothes which did not appear to have been worn. He thought this was unusual because he would have anticipated finding dirty clothes in the luggage if Montanez and Martinez had been in Houston four days as they had said.

He "then started a basic search of the vehicle." He first looked at the undercarriage of the Pathfinder and noticed a fresh coat of paint, which he testified is "unheard of on older model vehicles." He testified that based on his experience this "usually" indicates the existence of a false compartment, which is a "common concealment method" for sports utility vehicles. Because the occupants said they were traveling from Houston, Bridges's suspicions were further aroused because that city "is a major origin city" for contraband being sent to northern states. Bridges then searched other areas of the Pathfinder to try to isolate the location of the suspected compartment.

When he lifted the carpeting in the rear of the van, he noticed "a lot of screws missing that shouldn't have been missing" and "brand-new bolts" in two areas. These alterations provided further suspicion to Bridges that there was a hidden compartment underneath, "probably in the gas tank, and it was not feasible to drop a gas tank on the side of the road." Thus, Bridges requested for a canine unit to confirm his suspicions.

Bridges told the canine handler, Brian Holley, that he knew there were drugs in the car but could not find any. When the drug dog approached the taillight area, he began to give positive alerts. Holley suggested that Bridges search the mounted spare tire on the back of the vehicle, but they took the tire off and found nothing. Bridges testified that, based on the dog's alerts, he felt he had probable cause to believe that narcotics were hidden in the tank.

Bridges told Montanez and Martinez that he had reason to believe their gas tank had been tampered with. He informed them that the dog had alerted on the vehicle and that they would have to follow Bridges back to Nacogdoches so he could inspect the gas tank. Bridges stated, "You have to follow me. If you go any other direction, you will be under arrest. You are under arrest right now. You comprende?" Montanez replied that he understood. According to Bridges, Montanez did not indicate in any way at this point that he wanted to withdraw his consent to search.

The entire roadside encounter lasted about one and one-half hours. At the task force headquarters in Nacogdoches, they removed the gas tank and found a hidden compartment containing seven kilograms of cocaine.

## Standard of Review

According to the Court of Criminal Appeals,

The issue is whether, after affording almost total deference to the trial court's determination of historical facts that are supported by the record, the trial court abused its discretion by finding that the State proved by clear and convincing

evidence that Montanez voluntarily consented to the search of the vehicle.

*Montanez,* 195 S.W.3d at 108.

### Basis for Stop

■ Montanez first contends that Bridges did not have a lawful basis to stop him on the date in question. Bridges testified that he stopped Montanez because: (1) the cover around the edge of the license plate obscured the name of the issuing state; and (2) the license plate light was not working.

The latter stated basis for the stop constitutes a violation of section 547.322(f) of the Transportation Code which provides:

> [a] taillamp or a separate lamp shall be constructed and mounted to emit a white light that:
>
> (1) illuminates the rear license plate; and
>
> (2) makes the plate clearly legible at a distance of 50 feet from the rear.

TEX. TRANSP. CODE ANN. § 547.322(f) (Vernon 1999).[1]

Bridges and Montanez's counsel disputed whether the videotape shows that the license plate lamp was operational. Bridges explained on re-direct examination that the license plate is illuminated on the videotape by the headlights of his patrol car and by his spotlight. He reiterated that the license plate lamp "was not properly working" when he stopped Montanez. This is an issue on which we must give "almost total deference" to the lower court's decision. *See Montanez,* 195 S.W.3d at 106 (quoting *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997)).

Therefore, the court did not abuse its discretion by finding that Bridges had a lawful basis for stopping Montanez. *See* TEX. TRANSP. CODE ANN. § 543.001 (Vernon 1999); *Atwater v. City of Lago Vista,* 532 U.S. 318, 354, 121 S.Ct. 1536, 1557, 149 L.Ed.2d 549 (2001); *State v. Gray,* 158 S.W.3d 465, 469 (Tex.Crim.App.2005).

### Validity of Consent

■ Montanez next contends that the court abused its discretion by finding that he freely and voluntarily consented to the search because the record shows that he does not understand the English language very well.

Bridges acknowledged in his testimony that there was "somewhat of a language barrier" between Martinez and himself. On cross-examination, he agreed that Montanez had some limitations on his ability to communicate in English. However, Bridges testified, "I know that he probably don't speak as good English as I do," but "in my opinion we communicated quite well."

Martinez testified at the suppression hearing with the aid of an interpreter. In response to a question whether Montanez understood English better than he, Martinez stated, "He was talking to him a little bit more than me." Martinez conceded that he does not know how much English Montanez knows.

The videotape reflects that Bridges repeated questions on several occasions when talking with Montanez. Bridges would occasionally use a familiar Spanish word or phrase but for the most part spoke in English to Montanez.

---

1. Conversely, the "obstructed license plate" allegation does not appear to have been a traffic violation under the law in effect in 2000 when Montanez was arrested. *See* Act of May 30, 1999, 76th Leg., R.S., ch. 1189, § 17, 1999 Tex. Gen. Laws 4153, 4161 (amended 2003) (current version at TEX. TRANSP. CODE ANN. § 502.409 (Vernon Supp. 2006)); *United States v. Granado,* 302 F.3d 421, 423–24 (5th Cir.2002).

After reviewing the videotape and listening to the testimony, the court would have been within its discretion to conclude that Montanez only began to exhibit any indication that he did not understand the English language when Bridges asked for consent to search. The videotape does not affirmatively establish that Montanez does not understand the English language. Because of the conflicting evidence on the issue, after giving almost total deference to the trial court's determination, we cannot say the court abused its discretion by finding that the State proved by clear and convincing evidence that Montanez voluntarily consented to the search of the vehicle. *See Montanez,* 195 S.W.3d at 108.

### Scope of Consent

▉▉▉ Montanez finally contends that Bridges's decision to require him to drive to the task force's headquarters to inspect the gas tank and the search of the gas tank at that location exceeded the scope of the consent given.

> Absent an officer's request or a suspect's consent limiting a search to a particular area of a vehicle, such as the trunk or passenger compartment, a request to search "the car" reasonably includes all areas of the vehicle and excludes none. When an officer specifically asks a suspect if he can search a vehicle for illegal contraband, and the suspect answers affirmatively, a reasonable person would construe the consent to extend to any area of the vehicle in which such objects could be concealed.

*State v. Garrett,* 177 S.W.3d 652, 657–58 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd) (citations omitted); *accord Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991); *Vargas v. State,* 18 S.W.3d 247, 253–54 (Tex. App.-Waco 2000, pet. ref'd); *Cardenas v.*

*State,* 857 S.W.2d 707, 711 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd).

Montanez placed no express limits on the scope of his consent, and Bridges apparently did not expressly tell Montanez that he wanted to search for narcotics. Nevertheless, it is objectively reasonable that an unlimited consent to search a vehicle will extend to every part of the vehicle within which contraband may be hidden. *See id.*

Thus, we cannot say that the court abused its discretion by concluding that Bridges's decision to require Montanez to drive to the task force's headquarters so the gas tank could be more closely inspected and the search of the gas tank at that location did not exceed the scope of the consent given.

Accordingly, we overrule Montanez's sole issue and affirm the judgment.

Justice VANCE dissenting.

BILL VANCE, Justice, dissenting.

The opinion of the Court of Criminal Appeals states: "The fact that the State bore the burden of proving by clear and convincing evidence that Montanez voluntarily consented to the search at the suppression hearing does not change the standard of review on appeal." *Montanez v. State,* 195 S.W.3d 101, 108 (Tex.Crim.App. 2006).

That defies logic.

In my view, the error in that statement springs from the indiscriminate application of *Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Crim.App.1997), to all suppression hearings, regardless of their subject matter. *See Montanez,* 195 S.W.3d at 109–10 (Meyers, J., dissenting). The decision in *Guzman* was whether probable cause existed and the standard set out in the court's opinion was designed to comply with the mandate for "independent review"

of determinations of reasonable suspicion and probable cause set forth in the U.S. Supreme Court's *Ornelas* decision. *Guzman*, 955 S.W.2d at 87 (citing *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). The *Guzman* opinion notes that probable cause "requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence." Id.

Abuse-of-discretion reviews generally involve two types of questions: questions of fact[1] and questions of law. Questions of fact are subject to a deferential sufficiency review wherein we determine whether the evidence contained in the record sufficiently supports the factual matters determined by the trial judge. Application of the law to those facts is a question of law reviewed de novo. *See Villarreal v. State*, 935 S.W.2d 134, 145 (Tex.Crim.App.1996) (Keller, J., concurring).

Thus, the problem this court faced in this case, and faces again, is that we have found no Court of Criminal Appeals case defining the term "clear-and-convincing evidence." Nor did we find any discussion about how the requirement of clear-and-convincing proof of consent fits into the *Guzman* standard of review, which, as noted, did not address consent to search but dealt with findings of reasonable suspicion and probable cause that can be supported by less evidence than a preponderance.

I cannot conceive that the Court of Criminal Appeals would adopt a definition of clear and convincing evidence different from that enunciated by the U.S. Supreme Court and the Texas Supreme Court. And, I cannot believe that the court says that findings made under the constitutionally required clear-and-convincing standard of proof can be reviewed in the same manner as findings requiring only a preponderance of the evidence, or less. I say this because the court has already recognized that the burden of proof in a trial-court hearing affects the standard by which we review factual determinations on appeal. *See Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000). Thus, as a "matter of logic," our review of the ruling from a suppression hearing in which proof of the fact issue of consent must rise to the level of clear and convincing evidence should be less deferential, even when the standard of review is whether the trial judge abused his discretion and when the factual determinations turn on the credibility of the witnesses. *See Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App.2004)[2] ("As a matter of logic, a finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance.") (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002)).

Is the court really saying that under *Guzman*, the burden of proof at the suppression hearing does not matter, so that the standard of review is the same whether the burden in the trial court was clear and convincing evidence or some lesser burden?

Hopefully the court will re-examine whether *Guzman* applies to appellate review of all suppression hearings or just

---

1. The quantum of proof required in a suppression hearing may differ depending on the issue involved. For example, proof of consent requires clear and convincing evidence (as here). In a search warrant case proof of perjury or reckless disregard of the truth requires a lesser burden: preponderance of the evidence. Other issues require a lesser standard (such as in *Guzman*).

2. *Zuniga* was overruled in part by *Watson v. State*, 204 S.W.3d 404, 416 (Tex.Crim.App., 2006).

those involving reasonable suspicion and probable cause. A more workable solution would be to return to the two-part analysis, whereby fact issues are reviewed to determine whether the evidence contained in the record sufficiently supports the factual matters determined by the trial judge (bearing in mind the burden of proof at the hearing) and application of law to fact issues are reviewed de novo. *See Carmouche v. State,* 10 S.W.3d 323, 331 (Tex. Crim.App.2000).

The majority quotes the Court of Criminal Appeals' opinion: "The issue is whether, after affording almost total deference to the trial court's determination of historical facts that are supported by the record, the trial court abused its discretion by finding that the State proved by clear and convincing evidence that Montanez voluntarily consented to the search of the vehicle." *See Montanez,* 195 S.W.3d at 108. That statement is internally inconsistent— only *after* deferring to the trial judge's determination of historical facts that are supported by the record, should the question concerning abuse of discretion be asked. However, whether consent was given is an issue of fact. Here, it is an historical fact that must be supported by the record before it is due "almost total deference." Because I do not believe that the record sufficiently supports (by clear and convincing evidence) the implied finding that Montanez voluntarily consented to the search of the vehicle, I respectfully dissent.