

NUMBER 13-11-00223-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GERMAN MARTINEZ CEDENO,                                    Appellant,

v.

THE STATE OF TEXAS,                                         Appellee.

**On appeal from the 186th District Court
of Bexar County, Texas.**

# MEMORANDUM OPINION[1]

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez**

After the trial court denied appellant German Martinez Cedeno's motion to

suppress, a jury found Cedeno guilty of possession with intent to deliver a controlled

---

[1] This case is before the Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

substance, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2010). The trial court sentenced Cedeno to eight years' confinement in the Texas Department of Criminal Justice–Institutional Division. By two issues, Cedeno contends that the trial court (1) erred when it denied his motion to suppress, and (2) abused its discretion when it admitted a bag of crack cocaine into evidence. We affirm.

## I. Motion to Suppress[2]

By his first issue, Cedeno asserts that the scope of his consent to search his vehicle was exceeded. Cedeno argues that when he consented to the search, no reasonable man would have expected that the police would "pry off door paneling." We disagree.

## A. Background[3]

At the hearing on Cedeno's motion to suppress, Detective William P. Sendejo Jr., a fourteen-year veteran of the San Antonio Police Department (S.A.P.D.) who was assigned to the Narcotics Unit, testified that he and his partner, Detective Mario Jacinto, "were conducting surveillance on some suspects[, Cedeno and Reggie Reyes,] that [sic] were dealing crack." While conducting their covert surveillance, the detectives observed Cedeno and Reyes walk in and out of an apartment. During the surveillance, they also saw a man walk up to Cedeno and conduct a hand-to-hand transaction which Detective Sendejo believed involved the sale of small amounts of narcotics. A second person also

---

[2] The State filed no brief to assist us in the disposition of this case. Accordingly, we decide this appeal based on the brief filed by Cedeno and the record before us.

[3] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

approached Cedeno, spoke with him, and departed. During cross-examination, Detective Sendejo acknowledged that he did not know whether any illegal activity occurred during these interactions.

According to Detective Sendejo, during the surveillance, they also saw Cedeno and Reyes leave the apartment complex in a white Dodge Neon, driven by Cedeno. The detectives followed the car and observed it make two brief stops, one where a person approached the vehicle and the second where Reyes got out of the vehicle. They lost sight of the vehicle, but picked it up again "en route back to their apartment complex."

After asking "uniformed patrol officers to assist . . . with a possible traffic stop," the detectives observed a traffic violation—Cedeno rolled through a stop sign without making a complete stop and turned right. When Officer Jason Mendez responded to the request for assistance, the detectives advised him of their surveillance and of the traffic violation. They asked Officer Mendez to stop Cedeno.

Officer Mendez, an eight-year veteran with the S.A.P.D., also testified at the suppression hearing. He explained that on July 24, 2009, while on patrol in a marked vehicle, the Narcotics Unit requested assistance in stopping a white Dodge Neon, "probably occupied by two Latin males, possibly carrying narcotics, and . . . in the . . . 1200 block of East Mulberry . . . ." Detective Sendejo informed him that Cedeno "was supposed to meet somebody to deliver some narcotics." Officer Mendez, who also saw the vehicle fail to stop at the stop sign, conducted the traffic stop. When he asked Cedeno for his driver's license, Cedeno told him that he did not have one.

After Cedeno stepped out of the vehicle, Officer Mendez asked, among other things, if he had any drugs or weapons in his vehicle. Cedeno answered, "No." Officer

3

Mendez also asked, "Do you mind if I search your vehicle for anything?", and Cedeno gave his verbal consent by responding "Okay."

Officer Mendez described his search of Cedeno's vehicle as follows:

> I searched where [Cedeno] was sitting, like where—under the seat, the console, in that main area, and we were able to find the narcotics in the kick plate on the driver's side. . . .   [W]hen you open your vehicle, that little—either it's plastic sometimes or silver, where you would step your foot on, like it could be taken . . . off.   You can remove it.   It's easily removed.

Officer Mendez emphasized that the drugs were not anywhere in the driver's side door. Rather, he found them under the kick plate.   Detective Sendejo also provided the following testimony regarding the location of the drugs:

> The driver's side—driver's side door.   As you open it, the foot board has a plastic panel covering over it.   If you pop the panel out [without the need for tools], there is an open slot, and the narcotics were found in that little open slot underneath the plastic cover.

Cedeno was arrested for possessing a controlled substance with intent to deliver. Following Cedeno's arrest, the car was thoroughly searched by a K-9 unit, but no additional drugs were discovered.

## B.   Analysis

### 1.   Standard of Review and Applicable Law

We review the trial court's denial of a motion to suppress under a bifurcated standard of review.   *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). A reviewing court first gives "almost total deference to a trial court's determination of historical facts [that the record supports]" and then reviews the trial court's application of the law de novo.   *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc)).

4

The court of criminal appeals has specifically set out that "the question of whether a specific search . . . is 'reasonable' . . . under the Fourth Amendment is subject to de novo review." *Dixon v. State*, 206 S.W.3d 613, 616 (Tex. Crim. App. 2006); *see Vargas v. State*, 18 S.W.3d 247, 254 (Tex. App.—Waco 2000, pet. ref'd) (setting out that the scope of consent issue constitutes a mixed question of law and fact to be reviewed de novo); *see also* U.S. Const. amend. IV (protecting against "unreasonable searches and seizures"). A search conducted without a warrant issued upon probable cause is "per se unreasonable," subject only to specifically established and well-delineated exceptions, one of which is a search conducted with voluntary consent. *Rayford v. State*, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003). The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness, i.e., what the typical reasonable person could have understood by the exchange between the officer and the suspect. *Simpson v. State*, 29 S.W.3d 324, 330 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *see Florida v Jimeno*, 500 U.S. 248, 251 (1991). The scope of the search is generally defined by its expressed object, and a suspect may limit the scope of the search if he chooses to do so. *Simpson*, 29 S.W.3d at 330; *see Jimeno*, 500 U.S. at 251; *see also State v. Gonzalez*, No. 13-02-355-CR, 2004 Tex. App. LEXIS 6868, at *7-9 (Tex. App.—Corpus Christi July 29, 2004, no pet.) (mem. op., not designated for publication). "Absent an officer's request or a suspect's consent limiting a search to a particular area of a vehicle, such as the trunk or passenger compartment, a request to search 'the car' reasonably includes all areas of the vehicle and excludes none." *State v. Garrett*, 177 S.W.3d 652, 657 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). When an officer asks a suspect for permission to search a vehicle for illegal

5

contraband and the suspect agrees, a reasonable person would construe the consent to extend to any area of the vehicle where such objects could be concealed. *Id.* at 657-58; *Montanez v. State*, 211 S.W.3d 412, 416 (Tex. App.—Waco 2006, no pet.) ("It is objectively reasonable that an unlimited consent to search a vehicle will extend to every part of the vehicle within which contraband may be hidden."); *see also Gonzalez*, 2004 Tex. App. LEXIS 6868, at *10 ("When an officer states that he is looking for narcotics and consent is given, it is reasonable to conclude that such consent includes containers that may contain drugs.").

## 2. Application

According to Officer Mendez's testimony, he asked Cedeno if he had any drugs or weapons in his vehicle, to which Cedeno answered, "No." Officer Mendez also asked Cedeno if he could search his vehicle for anything. Cedeno verbally consented. Cedeno did not attempt to limit the scope of the search. He did not withdraw his consent. Moreover, by asking if he had any drugs in the vehicle and if he could search Cedeno's vehicle "for anything," Officer Mendez did not limit his search request to a specific area of the vehicle or to a particular item.

Based on the record before us, we conclude a typical reasonable person could have understood Cedeno's "okay" to be his consent to search any area of his vehicle where drugs could have been concealed. *See Montanez*, 211 S.W.3d at 416 (concluding that the defendant's unlimited consent to search the vehicle authorized the removal of the gas tank, which revealed hidden compartment containing drugs); *Garrett*, 177 S.W.3d at 658 (explaining that the appellant's voluntary consent to the search of his vehicle for illegal contraband authorized a search of truck's door panels, in which drugs

were found); *but see Gonzalez*, 2004 Tex. App. LEXIS 6868, at *7-10 (holding that a search using tools to open a secret compartment in the sleeper unit exceeded the scope of Gonzalez's consent to "look inside and look around" the truck because the officer did not identify the object of the search—narcotics). The drugs Officer Mendez identified could have been concealed under or in the kick plate by the driver's door, which could be removed easily without the use of tools. After reviewing the exchange between Cedeno and Officer Mendez, we conclude that a reasonable person could have construed Cedeno's consent to extend to that concealed area. *See Garrett*, 177 S.W.3d at 657-58; *Simpson*, 29 S.W.3d at 330.

In sum, based on our de novo review of the reasonableness of the search in this case, *see Dixon*, 206 S.W.3d at 616, we conclude that the trial court did not err in overruling Cedeno's motion to suppress because the search did not exceed the scope of Cedeno's consent. Having determined the trial court's ruling was supported by consent, we need not address Cedeno's other arguments. *See* TEX. R. APP. P. 47.1. We overrule the first issue.

## II.   Admission of Evidence

By his second issue, Cedeno contends that the trial court abused its discretion when it admitted as State's Exhibit 4, over objection, the drugs allegedly seized from Cedeno's vehicle. The trial court admitted the exhibit during the testimony of Detective Jacinto, the evidence custodian responsible for handling the evidence in this case. Cedeno claims that Detective Jacinto did not lay the predicate required to make the drugs admissible as physical evidence. More specifically, Cedeno complains that the trial court abused its discretion because Detective Jacinto did not recognize his mark on the

7

drugs introduced against Cedeno. Without that mark, Cedeno argues that the first link in the chain of custody was broken—that the State failed to establish the beginning of the chain of custody, and thus, there is no evidence that the drugs were the same drugs seized from his car.

### A. Background

At trial, Detective Jacinto, a sixteen-year veteran with the S.A.P.D. assigned to the Narcotics Unit in July 2009, testified that as the custodian of evidence he was responsible for getting "everybody's information, tak[ing] custody of all the evidence in [sic] the scene[,] and basically just plac[ing] it in the property room." At trial, Detective Jacinto identified State's Exhibit 3 as a manila envelope with markings, including a property room sticker with information on it for inventory purposes. Cedeno's name, date of birth, and State Identification Number appeared on the sticker. He also identified a plastic bag (the outside plastic bag) in the manila envelope that contained another plastic bag (the inside plastic bag) that had a substance in it; the plastic bags were admitted as State's Exhibit 4. Through his testimony, Detective Jacinto identified markings on the inside plastic bag as his initials that he placed there to show he had handled the evidence and no one else had tampered with it. Detective Jacinto explained that after he tested the drugs and received a positive reaction for narcotics, he put his initials on the inside plastic bag, secured it, and placed it in the property room. Officer Jacinto testified that other initials on the outside plastic bag were not his.

After the State offered the drugs as evidence, Cedeno's counsel took Detective Jacinto on voir dire. Detective Jacinto acknowledged that his initials did not appear on the manila envelope and that he did not know who wrote the information on the outside

8

plastic bag. He also testified that there were initials that looked like those of Annette Villarreal, the property room attendant, on the inside plastic bag and while he knew that he had initialed the inside plastic bag, he could not read the other initials on that bag.

After this exchange, counsel objected to the admission of the drugs on the basis that the proper chain of custody had not been established. After hearing arguments, the trial court overruled the objection and admitted into evidence the manila envelope and the plastic bags containing the drugs.

Officer Jacinto continued testifying before the jury, explaining that, at the scene, he measured the field weight of the narcotics; the narcotics and bag weighed 15.1 grams. Importantly, Officer Jacinto also testified that he took custody of the narcotics at the scene and put his initials on the bag. From there, the narcotics went to the property room where he generated a sticker to assign that property to this case. In the property room, he placed the bag of narcotics in a secure narcotics vault until attendants arrived the next morning to take custody of it.

## B. Analysis

### 1. Standard of Review and Applicable Law

We review a trial court's ruling on the sufficiency of an evidentiary predicate under an abuse of discretion standard. *Smith v. State*, 683 S.W.2d 393, 405 (Tex. Crim. App. 1984) (en banc); *Foster v. State*, 101 S.W.3d 490, 498 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Although the Texas Rules of Evidence do not define the term "chain of custody," rule 901(a) provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). For

9

example, this can be accomplished by testimony from a witness with knowledge that an item is what it is claimed to be or through evidence describing a process or system. *Id.* at R. 901(b)(1), (9). The court properly admits evidence when a reasonable juror could find that the evidence was authenticated. *Pondexter v. State*, 942 S.W.2d 577, 586 (Tex. Crim. App. 1996) (en banc).

"To support the admission of evidence, the State must prove only the beginning and end of the chain of custody." *Reed v. State*, 158 S.W.3d 44, 52 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *see Dossett v. State*, 216 S.W.3d 7, 17 (Tex. App.—San Antonio 2006, pet. ref'd); *Durrett v. State*, 36 S.W.3d 205, 208 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *see also Bone v. State*, No. 13-10-00337-CR, 2012 Tex. App. LEXIS 1450, at *17-24 (Tex. App.—Corpus Christi Feb. 23, 2012, no pet. h.) (mem. op., not designated for publication). In this case, Cedeno challenges only the State's proof of the first link or the beginning of the chain of custody. Gaps or theoretical breaches in the chain of custody do not affect the admissibility of the evidence absent affirmative evidence of tampering or commingling; any gaps go to the weight of the evidence rather than its admissibility. *Dossett*, 216 S.W.3d at 17; *Foster*, 101 S.W.3d at 498; *Durrett*, 36 S.W.3d at 208; *see also Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997) (en banc). Cedeno makes no allegations, such as police tampering with the evidence or commingling of the evidence that would go to the weight of the evidence. Therefore, the issue before us is whether the State established the beginning of the chain of custody such that the trial court did not abuse its discretion when it admitted the drugs into evidence.

### 2. Application

Cedeno's argument focuses on the fact that Detective Jacinto testified he could not identify the initials on the inside plastic bag as his initials. Because of this testimony, Cedeno contends that the State failed to establish the first link of the chain of custody. However, Detective Jacinto's trial testimony established that he was the custodian of evidence in this case and that he was at the scene where he took custody of the drugs. *See* TEX. R. EVID. 901(b)(1). After he tested the drugs, he put his initials on the inside plastic bag. He then placed the bag containing the drugs in a secure narcotics vault. *See id.* at R. 901(b)(9). The evidence established that Detective Jacinto controlled the drugs until he placed them in the vault. During his testimony, Officer Jacinto also identified the markings on the inside plastic bag as his initials, which were placed there to show he handled the evidence. Although during voir dire Detective Jacinto acknowledged that he could not tell if the initials on the inside bag were his, we cannot conclude that this fact renders the bag of drugs inadmissible absent a showing by Cedeno of tampering or alteration, which he does not allege. *See Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989) (en banc), *disapproved on other grounds by Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998); *see also Sander v. State*, No. 13-08-00653-CR, 2009 Tex. App. LEXIS 5670, at *18 (Tex. App.—Corpus Christi July 23, 2009, no pet.) (mem. op., not designated for publication) ("Because the beginning and end of the chain of custody of the blood sample was established, and because no evidence of tampering or alteration was adduced, we conclude that the trial court did not abuse its discretion in admitting the results of the blood test."); *Torres v. State*, No. 04-07-00522-CR, 2009 Tex. App. LEXIS 182, at *9-10 (Tex. App.—San Antonio Jan. 14,

2009, pet. ref'd) (mem. op., not designated for publication) (holding that evidence of established, routine procedures for medical blood tests, in the absence of evidence the procedures were not followed, is sufficient grounds for the trial court to admit the results of a medical blood test).   While the identification of Detective Jacinto's initials on the inside plastic bag would certainly be helpful to further establish the chain of custody, his trial testimony was sufficient without it to prove the beginning of the chain of custody.

Thus, on this record, we cannot say the trial court abused its discretion by admitting the drugs into evidence because the State presented sufficient evidence to support a finding that the first step in the chain of custody has been established.   *See* TEX. R. EVID. 901(a); *Durrett*, 36 S.W.3d at 211.   Accordingly, the trial court did not abuse its discretion in admitting the drugs as a trial exhibit.   We overrule Cedeno's second issue.

## III.   Conclusion

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
5th day of April, 2012.

12