

# IN THE
# TENTH COURT OF APPEALS

### No. 10-13-00307-CR

**JAY YOON CHUNG,**

          **Appellant**

 **v.**

**THE STATE OF TEXAS,**

          **Appellee**

**From the County Court
Navarro County, Texas
Trial Court No. C34587-CR**

## O P I N I O N

Jay Yoon Chung was charged with possession of a controlled substance which was enhanced by a conviction for two counts of indecency with a child. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (West 2010). He was found guilty and sentenced to 20 years in prison. Because the trial court did not err in denying Chung's motion to suppress regarding reasonable suspicion for the traffic stop but erred in denying Chung's motion to suppress regarding the warrantless search of Chung's cell phone, the trial court's judgment as to punishment is reversed and this case is

remanded to the trial court for a new trial on punishment.

**BACKGROUND**

Trooper Curtis Putz, of the Texas Department of Public Safety, received a call about a reckless driver on I-45 in Navarro County, Texas. He spotted the vehicle identified in the call and determined it was following another vehicle too closely. He initiated a traffic stop. When the vehicle pulled over, it rolled to a stop longer than typical and turned to the right so that Putz could not see the driver in the vehicle's side mirror. Putz approached the driver, Chung, who appeared to be jumpy, overly talkative, and unusually nervous. Based on his observations, Putz asked Chung for his consent to search the vehicle and Chung consented. Before initiating the search, Putz went to his patrol car and checked for outstanding warrants. When Putz returned to Chung's vehicle, Chung withdrew his consent to search. Putz called a canine unit to sniff the exterior of the vehicle. When the dog alerted to the presence of drugs, Putz searched the vehicle, locating a marijuana pipe and two large knives. Later, at DPS headquarters, a further search of the vehicle revealed cocaine residue on a cut straw and in a glass vial. The contents of Chung's cell phone was also searched at the DPS headquarters. On the cell phone, Putz saw three pictures of what appeared to be under-aged girls in Chung's vehicle and also saw photos of female genitalia. Putz stopped searching and obtained a search warrant for the cell phone's contents.

Chung filed three motions to suppress: the first requesting suppression of all

evidence seized during the stop of Chung's vehicle; the second requesting suppression of any statements made by Chung; and the third requesting suppression of the evidence seized from Chung's cell phone. At the start of trial, Chung withdrew his motion to suppress statements he made. After separate hearings, the trial court denied Chung's first and third motions to suppress. No request for findings of fact or conclusions of law for either ruling was requested by Chung.

Chung's first and third issues challenge the trial court's rulings on his first and third motions to suppress. Because sustaining Chung's third issue would give Chung the greatest relief, we discuss that issue first.

STANDARD OF REVIEW

A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Clay v. State*, 382 S.W.3d 465, 466 (Tex. App.—Waco 2012, pet. ref'd). We review the record in the light most favorable to the trial court's conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *Clay*, 382 S.W.3d at 466. We sustain the lower court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id*. When the trial court does not make explicit findings of fact, as is the case here, we infer the necessary factual findings that support the trial court's ruling if the record evidence, viewed in the light most favorable to the ruling, supports these implied fact

findings. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006). Further, we give almost total deference to a trial court's express or implied determination of historical facts and review de novo the court's application of the law of search and seizure to those facts. *Dixon*, 206 S.W.3d at 590; *Clay*, 382 S.W.3d at 466-467.

**REASONABLE SUSPICION TO STOP**

Chung complains in his third issue, presented in his supplemental brief, that the trial court erred in denying his first motion to suppress because the State failed to establish reasonable suspicion for Chung's detention; in essence for initiating the traffic stop of his vehicle.

The Fourth Amendment to the United States Constitution as well as Article I, Section 9 of the Texas Constitution protect against unreasonable searches and seizures conducted by the government. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. For Fourth Amendment purposes, a traffic stop is a seizure and must be reasonable to be lawful. *Davis v. State*, 947 S.W.2d 240, 243-45 (Tex. Crim. App. 1997). A traffic violation committed in an officer's presence authorizes an initial stop. *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982). However, there is no requirement that an actual traffic offense be committed, just that the officer reasonably believed that a violation was in progress. *Vasquez v. State*, 324 S.W.3d 912, 919 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *Green v. State*, 93 S.W.3d 541, 545 (Tex. App.—Texarkana 2002, pet. ref'd). The determination of reasonableness is made by considering the

totality of the circumstances. *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005). Further, the burden is on the State to demonstrate the reasonableness of the stop. *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002).

At the hearing on the motion to suppress, Trooper Putz, a six year veteran of the Department of Public Safety, testified he first saw Chung's vehicle, a white Ford van, southbound on I-45 as Putz was entering the highway from the service road. A few minutes before this, dispatch had advised Putz that a reckless driver in a white Ford van was southbound on the Interstate. What caught Putz' attention was that the van was following another vehicle too closely. Following too closely is a traffic offense. Putz could see the offense because he was parallel to the vehicles as he was entering the highway. The traffic conditions at the time he spotted the violation were moderate. The speed limit was 70 miles per hour, and Putz agreed that at that speed, one who followed another too closely would not generally have the ability to stop safely.

Chung argues that the stop was unreasonable because Putz initially obtained his information about the van from dispatch through an anonymous caller, and that, according to the United States Supreme Court opinion in *Navarette v. California*, the anonymous tip was unreliable. *Navarette v. California*, ___ U.S. ___; 134 S. Ct. 1683; 188 L. Ed. 2d 680 (2014). We agree that an anonymous tip alone will seldom provide the kind of reliability necessary to support a determination of reasonable suspicion to justify an investigatory stop. *Id*. at 1688. However, in this case, the anonymous tip of a

reckless driver did not provide the sole basis for the stop. Here, Putz saw the white van mentioned in the tip but also observed, for himself, a separate traffic violation. Thus, the two step process to analyze the reliability of an anonymous tip set out in *Navarette* does not apply.

Chung also argues that Putz' testimony does not demonstrate the reasonableness of the stop because Putz made a conclusory statement that Chung was following another vehicle too closely. *See Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005) ("Allowing a police officer's opinion to suffice in specific facts' stead eviscerates *Terry's* reasonable suspicion protection."). However, because the suppression issue was consensually re-litigated by the parties during the trial on the merits, we are permitted to consider Putz' testimony at trial as well. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). At trial, Putz provided the additional information that he believed Chung's van was less than a half a car length behind the other vehicle and was travelling at about 60 to 65 miles per hour. Chung contends we should not believe Putz' trial testimony because it conflicted with his testimony at the hearing on the motion to suppress. We review all the testimony in the light most favorable to the trial court's ruling and consider the totality of the circumstances as to reasonable suspicion in determining whether the trial court's ruling is reasonably supported by the record. Even with Putz' potentially conflicting testimony, we believe that it is.

Considering all the testimony and the totality of the circumstances, we conclude

Putz reasonably believed that Chung committed a traffic offense and thus, had reasonable suspicion to stop the vehicle.  Accordingly, the trial court did not abuse its discretion in denying Chung's first motion to suppress, and Chung's third issue is overruled.

**WARRANTLESS SEARCH**

In his first issue, Chung argues that the trial court erred in denying his "3rd Motion to Suppress" and admitting evidence found on Chung's cell phone in violation of Chung's rights under the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution.

As a general rule, searches conducted without a warrant are deemed unreasonable unless the situation presents an exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219; 93 S. Ct. 2041; 36 L. Ed. 2d 854 (1973); *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010).   When it is initially shown that a warrantless search occurred, the State has the burden of sanctioning it in some manner, *i.e.* with an exception to the warrant requirement.  *See McGee v. State*, 105 S.W.3d 609, 613 (Tex. Crim. App. 2003).

Further, if the State cannot prove an exception applies, article 38.23 of the Code of Criminal Procedure requires the exclusion of evidence obtained by the officer "in violation of any provisions of the Constitution or laws of the State of Texas."  TEX. CODE CRIM. PROC. art. 38.23(a) (West 2005).   Evidence should be excluded once a causal

connection between the illegality and the evidence is established. *Wehrenberg v. State*, 416 S.W.3d 458, 468 (Tex. Crim. App. 2013); *Roquemore v. State*, 60 S.W.3d 862, 870 (Tex. Crim. App. 2001).

It is undisputed that the officer's initial search of Chung's cell phone occurred without a warrant. The State argues the officer did not need a warrant to search Chung's phone because of three exemptions to the warrant requirement.[1]

*Preservation*

We must first address the State's argument that Chung's complaint on appeal is unpreserved. The State claims Chung never put the State or the trial court on notice that he objected to the admission of evidence derived from Putz' search of the cell phone at the time of Chung's arrest. In his "3rd Motion to Suppress," Chung alleged that

> …Law Enforcement Officers violated the constitutional and statutory rights of the Defendant under the Fourth…Amendment[s] to the United States Constitution, Article I, Section 9 of the Texas Constitution, and under Article 38.23 of the Texas Code of Criminal Procedure.

> Any tangible evidence seized in connection with this case, including but not limited to items seized from the Defendant's phone(s) was seized without warrant, probable cause or other lawful authority in violation of the rights of Jay Chung….

At the hearing on that motion to suppress, it was clear that Chung's counsel was

---

[1] The parties have not addressed the search warrant that was obtained based, in part, upon the content of the phone obtained without a warrant. Accordingly, we also do not address what effect, if any, that would have on the error or harm analysis.

concerned with the initial search of Chung's cell phone. He told the court, "that Affidavit also describes a prior search of the phone before they actually did a probable cause – they procured the warrant," and "ultimately I would make my argument that there was not probable cause to initially search Mr. Chung's phone, which lead to then procuring of – of a warrant – signing a Warrant Affidavit." Counsel asked permission to call Trooper Putz to the stand to testify as to how he determined he had probable cause to search Chung's cell phone initially. The State opposed counsel's request asserting, "even if [counsel] wants to argue that the initial looking of the phone, by the Trooper, isn't justified, the Trooper lays out, within the Affidavit, two perfectly valid legal justification for him looking in the phone. I.E. consent and search incident to arrest, …So, again, I don't think …there's any need for [—] to go outside the four corners…It's all within the Affidavit."

The trial court ultimately denied the motion to suppress without hearing any testimony. However, the court allowed counsel for Chung to present a bill of review for appeal where counsel asked Trooper Putz about his justification for initially searching Chung's cell phone. Counsel asked the court to reconsider its ruling based on the testimony but that request was denied.

To preserve a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that states the grounds for the ruling sought with sufficient specificity to make the trial court

aware of the complaint unless the grounds were apparent from the context. TEX. R. APP. P. 33.1(a). After reviewing the record, we conclude the trial court and the State knew what Chung's counsel was complaining about: the legality of the initial search of Chung's cell phone. Accordingly, we find that Chung has preserved his first issue for review.

*Consent*

In reply to Chung's first issue, the State argues that Chung consented to a search of his cell phone. Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Schneckloth*, 412 U.S. at 219; *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). It must be voluntary based on a consideration of all the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S. Ct. 417; 136 L. Ed. 2d 347 (1996). "Under Texas law, the State must prove voluntary consent by clear and convincing evidence." *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011).

The scope of consent may be limited either "by its expressed object" or by any limitations the suspect expresses when consenting. *Florida v. Jimeno*, 500 U.S. 248, 251; 111 S. Ct. 1801; 114 L. Ed. 2d 297 (1991). In determining the scope of consent, we apply an objective standard of what a reasonable person would have understood by the exchange between the officer and the individual. *Valtierra v. State*, 310 S.W.3d 442, 449 (Tex. Crim. App. 2010); *Vargas v. State*, 18 S.W.3d 247, 253 (Tex. App.—Waco 2000, pet.

ref'd). Although permission may be granted for a general, unlimited search of the contents of a cell phone, that kind of permission was neither sought nor granted here. *See Lemons v. State*, 298 S.W.3d 658, 662 (Tex. App.—Tyler 2009, pet. ref'd) ("unlimited consent" to search cell phone); *Montanez v. State*, 211 S.W.3d 412, 416 (Tex. App.—Waco 2006, no pet.).

Trooper Putz testified that as he placed Chung in the patrol car, Chung's phone began to ring. Chung asked who it was. When Putz opened the phone, he asked Chung for his password which was given. Chung's offer of his password was for a specific reason only; to find out who was calling. There was no request by the officer to search the entire contents of the phone nor was permission granted to search the entire contents of the phone. Further, Putz acknowledged that Chung did not give him consent to generally search Chung's phone.

In this situation, Chung did not acquiesce to a general, full content, search of his phone by giving Putz his password. And a reasonable person would not have believed permission to search the phone was granted. Thus, the State did not prove by clear and convincing evidence that Chung voluntarily consented to the search of his cell phone, and the warrantless search cannot be justified under this exception.

*Automobile Exception*

Next, the State argues that because a drug dog gave a positive alert to drugs in Chung's vehicle, and at one time the phone had been in the vehicle, Trooper Putz had

probable cause to search the phone, hours later, without a warrant.

After Chung had been arrested but before his vehicle was towed, Putz was called to another location north of Corsicana to investigate an accident. After working the accident and upon returning to the office in Corsicana, Putz searched Chung's phone for drug evidence. He acknowledged that he did not have a warrant for this search. He also acknowledged that Chung did not give him consent to generally search Chung's phone. Putz testified that he felt compelled to search the phone because people take pictures and brag about what they do and thus, "you do find a lot of evidence on phones." Putz agreed with the prosecutor that based on his training and experience, he felt reasonably likely he might find evidence of drug activity on the phone and that before he searched the phone, a drug dog alerted to the presence of drugs in Chung's vehicle.

The Court of Criminal Appeals has held that a dog sniff is not a search, and that generally, a positive alert by a certified drug dog is usually enough, by itself, to give officers probable cause to search. *State v. Weaver*, 349 S.W.3d 521, 527-528 (Tex. Crim. App. 2011). The holdings relied upon by the Court of Criminal Appeals in making its holding were based on the legal theory that a dog sniff reveals no information other than the location of a substance that no individual has a legitimate privacy interest in. *Id*. n. 32. But, a person has a reasonable expectation of privacy in the contents of his cell phone, especially when it has been removed from him and stored by law enforcement.

*State v. Granville*, 423 S.W.3d 399, 416 (Tex. Crim. App. 2014). Thus, the mere fact that a drug dog alerted to the presence of drugs in Chung's vehicle did not give Putz probable cause to later search Chung's cell phone.

Additionally, law enforcement may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained. *Cal. v. Acevedo*, 500 U.S. 565, 580; 111 S. Ct. 1982; 114 L. Ed. 2d 619 (1991). Chung's cell phone was not in his car when the officers searched the vehicle after the drug dog alert. Rather, it was with Chung. After Chung had been told to exit his car, Chung displayed his cell phone when he informed Putz that Chung's lawyer told him not to give Putz permission to search the car.

The State relies on *Acevedo* for the proposition that simply because an item such as a cell phone was in a vehicle at one time, even if it was not in the vehicle when it was searched, the automobile exception to the warrant requirement still applies. *Acevedo* does not stand for that proposition. Rather, *Acevedo* holds that containers located in a vehicle may be searched without a warrant when there is probable cause to search the vehicle or probable cause to search the container. The State cites us to no other case for its proposition.

Further, we have grave doubts that a cell phone is a "container" that could be searched pursuant to the automobile exception. The United States Supreme Court has said that "treating a cell phone as a container in whose contents may be searched

incident to an arrest is a bit strained…" *Riley v. California*, ___ U.S. ___; 134 S. Ct. 2473; 189 L. Ed. 2d 430, 448, (2014). We believe the same can be said for treating a cell phone as a container which may be searched as a part of the automobile exception: it is "a bit strained." The State has not convinced us otherwise and we will not treat it as such on the facts of this case. Thus, the warrantless search cannot be justified under the automobile exception to the warrant requirement.

*Search Incident to Arrest*

Lastly, the State argued to the trial court that the warrantless search was proper as a search incident to an arrest. Recently, the United States Supreme Court has determined that officers must generally secure a warrant before conducting a search of a cell phone incident to an arrest of an individual. *Riley v. California*, ___ U.S. ___; 134 S. Ct. 2473; 189 L. Ed. 2d 430, 441-442 (2014). The State acknowledges this holding but asks us not to apply the Court's decision retroactively.

We need not discuss whether the holding in *Riley* is to be applied retroactively for the following reasons. First, the State contends the cell phone was searched pursuant to the automobile exception to the warrant requirement, not incident to an arrest. We have already held that, in this situation, the automobile exception does not apply. Second, we agree that the search of the cell phone was not "incident to an arrest."

A search is incident to arrest only if it is "substantially contemporaneous" with

the arrest and is confined to the area within the immediate control of the arrestee. *State v. Granville*, 423 S.W.3d 399, 410 (Tex. Crim. App. 2014) (citing *Vale v. Louisiana*, 399 U.S. 30, 33; 90 S. Ct. 1969; 26 L. Ed. 2d 409 (1970)). Thus, a search incident to arrest cannot normally be justified if the "'search is remote in time or place from the arrest' . . . or no exigency exists." *Id*. (citing *United States v. Chadwick*, 433 U.S. 1, 15; 97 S. Ct. 2476; 53 L. Ed. 2d 538 (1977)).

Here, after Chung was arrested, Putz was called to another location to work an accident. After working the accident, Putz returned to the DPS headquarters where he began to search Chung's cell phone. Chung's vehicle had been impounded and Chung was in a holding cell. Based on this evidence, we do not consider the search of the cell phone to be "substantially contemporaneous" to Chung's arrest to have been a search incident to arrest. Thus, the warrantless search cannot be justified by the "incident to arrest" exception to the warrant requirement.

None of the warrant exceptions expressed by the State, either at trial or on appeal, justified a warrantless search of Chung's cell phone. Additionally, the record establishes Trooper Putz used what he saw on the phone as a basis for the search warrant; thus, a causal connection between the illegal search of Chung's cell phone and obtaining the evidence via a search warrant was established. Further, based on this record, no doctrine such as attenuation of the taint doctrine or the independent source doctrine would prevent the application of article 38.22, our exclusionary statute.

Accordingly, the evidence seized from Chung's cell phone should have been suppressed, and we find the trial court abused its discretion in denying Chung's motion to suppress the contents of the cell phone.

## HARM ANALYSIS

Having concluded that the trial court abused its discretion, we must now consider whether Chung was harmed as the result of this error. The admission of evidence obtained in violation of the Fourth Amendment is subject to a constitutional harm analysis pursuant to Texas Rule of Appellate Procedure 44.2(a). *See Hernandez v. State*, 60 S.W.3d 106, 106 (Tex. Crim. App. 2001). If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, we must reverse the judgment of conviction or punishment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* TEX. R. APP. P. 44.2(a). An analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether beyond a reasonable doubt the error did not contribute to the conviction or punishment. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011).

### *Evidence*

Chung was found in possession of cocaine residue in an amount less than one gram. With the added enhancements of convictions for two counts of indecency with a

child, which required Chung to register as a sex offender, the range of punishment was two to 20 years in prison. The jury sentenced him to the maximum, 20 years.

The majority of the State's evidence on punishment consisted of photos and text messages seized from Chung's phone. The State introduced a DVD containing approximately 19 photos and videos copied from Chung's cell phone, including photos of a young girl with Chung's puppy and photos of female genitalia. At one point, the State showed a specific sequence of photos to the jury: first, a young girl with the puppy; second, a close up of the "crotch area" of the girl and a paw of the puppy; and third, a close up of female genitalia. Because the State only offered a portion of the over 700 images seized from Chung's phone, Chung felt compelled to offer all of the images to show that all were not of such caliber of what the State offered. Further, the State introduced girls' hair ties and ladies panties seized from Chung's van into evidence. Although the jury was instructed that there was "nothing in any of the evidence as to the age of any person depicted in any images or in relation to any items of evidence" and that nothing in the Code of Criminal Procedure prohibited a person required to register as a sex offender from possessing pornography, none of the DVD evidence would have been admitted had the trial court suppressed the evidence seized from Chung's phone. The State also introduced, through the testimony of Trooper Putz, text messages seized from Chung's cell phone which showed several requests for and sales of various illegal substances such as Xenox, marijuana, and cocaine. Had the evidence

seized from Chung's cell phone been suppressed, none of this evidence would have been admitted.

Although the State did not emphasize the seized pictures during its closing argument, it did emphasize how Chung had been involved in selling drugs "and other actions" after getting out of prison and after others had taken him in, given him a job, and given him a van so that he could make a living. This argument could not have been made without the evidence seized from Chung's phone.

*Conclusion*

As stated previously, the cell phone evidence was the majority of the evidence introduced by the State at punishment. Consequently, the jury likely placed great weight upon that evidence, especially in conjunction with the hair ties and panties, in making their punishment decision. Further, suppressing the evidence would have vitiated a central argument made by the State during its closing argument. Thus, based on this record, we cannot say beyond a reasonable doubt that the court's failure to suppress the evidence seized from Chung's cell phone did not contribute to Chung's punishment.

Chung's first issue is sustained. Because we have sustained Chung's first issue, we need not review Chung's second issue on appeal.

CONCLUSION

Having determined that the trial court abused its discretion in denying Chung's

"3rd Motion to Suppress," we reverse the trial court's judgment and remand this case to the trial court for a new trial on punishment.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Reversed and remanded
Opinion delivered and filed October 23, 2014
Publish
[CR25]

