

# IN THE
# TENTH COURT OF APPEALS

### No. 10-15-00074-CR
### No. 10-15-00075-CR
### No. 10-15-00076-CR

**JESSE DEAN CONTRERAS,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 40th District Court
### Ellis County, Texas
### Trial Court Nos. 38209CR, 38210CR and 38211CR

## MEMORANDUM OPINION

Appellant Jesse Dean Contreras was charged in three indictments with the offenses of possession of marijuana (five pounds or less but more than four ounces), unlawful possession of a firearm by a felon, and possession of a controlled substance (methamphetamine, in an amount of four grams or more but less than 200 grams). Contreras entered a plea of not guilty to each offense, and, upon Contreras's waiver of a jury trial in each case, the trial court conducted a joint bench trial for all three cases, with

Contreras's motion to suppress to be heard with the trial.

The trial court denied the motion to suppress, found Contreras guilty of all three charges, and sentenced him on the above three convictions as follows, respectively: 365 days in state jail; five years' imprisonment; and five years' imprisonment and a $2,000 fine.

Contreras's first issue in each case is that the trial court erred in denying his motion to suppress.

## Standard of Review

> We review a trial judge's ruling on a motion to suppress under a bifurcated standard of review. First, we afford almost total deference to a trial judge's determination of historical facts. The judge is the sole trier of fact and judge of witnesses' credibility and the weight to be given their testimony. When findings of fact are not entered, we view the evidence in the light most favorable to the judge's ruling and assume the judge made implicit findings of fact that support the ruling as [long as] the record supports those findings. Second, we review a judge's application of the law to the facts *de novo.* We will sustain the judge's ruling if the record reasonably supports that ruling and is correct on any theory of law applicable to the case.

*Cole v. State,* --- S.W.3d ---, ---, 2016 WL 3018203, at *3 (Tex. Crim. App. May 25, 2016) (footnoted citations omitted). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly v. State*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006). We then review the trial court's legal ruling *de novo* unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819.

## Suppression Evidence

Officer Adrian Harris testified that he was working as a patrol officer on the night shift for the City of Ennis on May 13, 2013, when he was dispatched to a call about a pickup truck that had been sitting for about twenty-five minutes in the parking lot of a business (a Dairy Queen) that was getting ready to close. The call came in about 10:30 p.m. Harris was not asked and therefore did not state whether he knew who had called police about the truck.

Harris pulled into the parking lot about the same time as another officer, Treadaway. At that time, Harris did not observe anything illegal, and Contreras had not committed an offense in Harris's presence. Officer Clark, a third officer, arrived later. Harris testified that he parked his patrol car on the passenger side of Contreras's truck and somewhat blocked Contreras's ability to leave. Treadaway's patrol car was parked on the south side of Contreras's truck, and Clark's patrol car was parked on the driver side of Contreras's truck and would have made it difficult for Contreras to leave in the truck.

As both officers were getting out of their vehicles, Contreras, the occupant of the truck, got out of his truck and started to walk toward them. When asked by Treadaway what he was doing in the parking lot, Contreras said that he had pulled over to text his mother. Harris then asked Contreras what he was doing in Ennis, and Contreras responded that he had come to buy a set of rims for his truck. There were rims in the back of the truck. Harris was not able to say that Contreras was nervous.

Harris indicated that at the time he first made contact with Contreras, he was free to leave, but Harris also testified that after Contreras got out of his vehicle and started walking, he placed himself so that Contreras would not run. He further testified that once all three patrol vehicles had pulled in, if Contreras had attempted to drive off, he would have stopped Contreras to question him about the "suspicious vehicle" call.

Harris said that for a suspicious-vehicle call, officers typically obtain the identification of the occupants and then allow them to leave. Thus, the officers asked Contreras for his identification. Contreras provided a name and date of birth that they ran through dispatch. Dispatch confirmed that Contreras had a driver's license and that he was not wanted but also informed the officers that Contreras had several license suspensions on his record for no insurance. When asked how he had arrived there, Contreras responded that he drove, so the officers asked to see his insurance. Contreras also told them that he was allowed to drive with an occupational license, and Harris discussed with Contreras that his travel to Ennis to purchase rims was not covered by his occupational driver's license, which limits travel to work, school, or any essential place for the household.

Contreras told the officers that his proof of insurance was in his truck, which was locked, and that he could not get in. Contreras tried to get in on the driver's side, but the door was locked and he stated the keys were inside the vehicle. Officer Treadaway then tried the passenger's side door, and it was unlocked. Treadaway reached inside and picked up the keys from the center floorboard and threw them across the truck to

Contreras. Treadaway did not ask Contreras for permission to enter his truck, and Contreras did not tell Treadaway that he could open the door on the passenger side.

When Contreras unlocked the driver's-side door and opened the door to get his proof of insurance, Harris observed a white glassy pipe inside the door handle of the driver's-side door. Harris testified that after he had observed the white glassy pipe, Contreras stepped back out of the truck, pushed the lock down, and shut the door. He told Harris that he needed a warrant to get back inside his vehicle. Because Harris had observed drug paraphernalia inside the truck, he took Contreras into custody for that offense. At no time did Treadaway tell Harris that he had observed the glass pipe when he opened the passenger door to get Contreras's keys.

Importantly, Harris testified that Treadaway did not at any time tell Harris that he had observed the glass pipe. Harris observed the glass pipe only when Contreras had opened the door himself.

After Contreras was arrested, he was patted down for weapons, and a glassy rock was located in his left shirt pocket and a baggy with a white crystal substance believed to be crystal methamphetamine was found in the right pocket of his shorts. There also was $730 in cash in his pocket. When the narcotics were found in his pockets, Contreras stated that his life was over.

Contreras was placed in the patrol car, and his vehicle was searched incident to his arrest. A firearm was found in the center console. Police also found in the truck a bundle of marijuana, brass knuckles, several small baggies that a drug dealer would use for packaging to sell, pills, and two scales that a drug dealer would use to measure the

quantity of drugs. The bundle of marijuana was wrapped in duct tape and was in a gallon-sized sandwich bag that was inside a black trash bag with coffee grounds. The grounds are used to "smother the smell" of the marijuana.

When the officers pulled into the parking lot, they did not have their lights activated, and they did not ask Contreras to get out of his truck—Contreras met them before they got to his truck. Harris said that if Contreras had gotten his proof of insurance and if he had not seen the glass pipe, Contreras would have been free to go.

Officer Clark was also dispatched to the Dairy Queen to assist Harris. When Clark arrived, Contreras was in handcuffs. Clark did not know who had made the call about Contreras's truck that evening.

In denying the motion to suppress, the trial court made the following oral findings and statements:

> On the Motion to Suppress, you know, you have to kinda look at was it a voluntary encounter or was - - was it a detention? I think when Mr. Contreras got out of the car it probably was voluntary at that time. He voluntarily got out of the car … to meet the officers and talk. I think the officers when they got the call for suspicious activity they had an opportunity to go there and look and see what was going on, what's happening at the Dairy Queen. Mr. Contreras answered some of the questions the officers were looking for, you know, who are you? They can ask that. They can check and see if you have any warrants, check your driver's license, see if you're the same person. Unfortunately, you didn't have a driver's license so they took your name. They ran your history, they saw that you had, I guess, a license suspension. You informed them you had an occupational. At that point, I think the officer was able to ask you, hey, I need to see your insurance, your occupational to make sure you can be driving because you're in Ennis. Had that gone smoothly, you gave him the insurance card and occupational, it would've be[en] fine, but once the door was open and the cop saw in pla[i]n view the pipe in the door of the driver's side, the officer then had a right to detain you, pat you down and for that reason I find, through the totality of the circumstances, I think the

officer articulated enough what he was wanting from you. I think the other officer opening the car door there was nothing articulated to me that there was something unreasonable going on. He clued in the cop, I heard nothing of that. You opened your door from the driver's side, the cop saw it and from that point on, you were arrested, detained, they searched your car, they patted you down, found stuff on you. For those reasons the Motion to Suppress is denied.

## Applicable Law

Law enforcement and citizens engage in three distinct types of interactions: (1) consensual encounters; (2) investigatory detentions; and (3) arrests.

Consensual police-citizen encounters do not implicate Fourth Amendment protections. Law enforcement is free to stop and question a fellow citizen; no justification is required for an officer to request information from a citizen. And citizens may, at will, terminate consensual encounters. Even when the officer did not communicate to the citizen that the request for information may be ignored, the citizen's acquiescence to an official's request does not cause the encounter to lose its consensual nature. Courts consider the totality of the circumstances surrounding the interaction to determine whether a reasonable person in the defendant's shoes would have felt free to ignore the request or terminate the interaction. If it was an option to ignore the request or terminate the interaction, then a Fourth Amendment seizure has not occurred. The surrounding circumstances, including time and place, are taken into account, but the officer's conduct is the most important factor when deciding whether an interaction was consensual or a Fourth Amendment seizure.

No bright-line rule governs when a consensual encounter becomes a seizure. Generally, however, when an officer through force or a showing of authority restrains a citizen's liberty, the encounter is no longer consensual. This is the point at which an encounter becomes a detention or arrest, both of which are seizures under the Fourth Amendment. Thus, Fourth Amendment scrutiny becomes necessary. When there is a detention, courts must decide whether the detaining officer had reasonable suspicion that the citizen is, has been, or soon will be, engaged in criminal activity. When there is a warrantless arrest, courts must determine whether the arresting officer had probable cause to believe the same. The State bears the burden of producing specific articulable facts showing reasonable suspicion and probable cause. To meet its burden, the State may present the specific facts known to the officer at the moment the seizure occurred.

In making this determination, courts use "commonsense judgments and inferences about human behavior."

*State v. Woodard,* 341 S.W.3d 404, 410-11 (Tex. Crim. App. 2011) (footnoted citations omitted); *see Derichsweiler v. State,* 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (reasonable suspicion based on totality of the circumstances).

## Analysis

The record plainly supports the trial court's finding that the initial encounter between Contreras and the officers was consensual.[1] Contreras got out of his truck and approached the officers. Officer Harris said that at the time he first made contact with Contreras, he was free to leave. During this consensual encounter, Contreras identified himself, gave his date of birth, and said that he had an occupational driver's license. Harris had dispatch run Contreras's identification and was informed by dispatch that Contreras had a driver's license and was not wanted but that Contreras's license had been suspended several times for having no insurance. Harris then asked Contreras how he had arrived there, and Contreras responded that he drove, so Harris asked Contreras for his proof of insurance. Harris also discussed with Contreras that his travel to Ennis to purchase rims was arguably not covered by his occupational driver's license.

At that point, and based on the totality of the circumstances—learning that Contreras had a history of suspensions for no insurance and that he had driven to Ennis

---

[1] Because the initial encounter was consensual and was not an investigative detention, Contreras's complaint that the allegedly anonymous tip (the call to police about the suspicious truck) was insufficient to establish reasonable suspicion is inapplicable. *See Chung v. State,* 475 S.W.3d 378, 383 (Tex. App.—Waco 2014, pet. ref'd) ("We agree that an anonymous tip alone will seldom provide the kind of reliability necessary to support a determination of reasonable suspicion to justify an investigatory stop.") (citing *Navarette v. California,* 134 S.Ct. 1683, 1688 (2014)).

to buy rims with an occupational driver's license—the officers had reasonable suspicion at that point to detain Contreras for further investigation, including asking him to provide his proof of insurance.

When Contreras told the officers that his proof of insurance was in his locked truck and that his keys were in the truck, Officer Treadaway opened the unlocked passenger-side door, retrieved Contreras's keys, and threw them across the truck to Contreras. Contreras's statement that his proof of insurance was in his locked truck did not "automatically mean" that Treadaway could enter Contreras's truck to obtain the keys. *Cf. Baldwin v. State,* 278 S.W.3d 367, 372 (Tex. Crim. App. 2009) ("Though an officer may ask a defendant to identify himself during a valid investigative detention, that does not automatically mean that the officer can search a defendant's person to obtain or confirm his identity."). But even if Treadaway's entry into Contreras's truck exceeded Treadaway's authority and was unlawful, the record is clear that Treadaway did not see the glass pipe and alert Harris about it. Therefore, when Contreras unlocked and opened the driver-side door and Harris only then saw the glass pipe, Harris discovered and obtained the contraband independently from Treadaway's arguably unlawful entry. *See Wehrenberg v. State,* 416 S.W.3d 458, 467-68 (Tex. Crim. App. 2013) ("evidence obtained pursuant to an independent source, much like evidence for which a prior taint has been attenuated, is not 'obtained' in violation of the law and is thus not subject to suppression").

Finally, upon Harris's discovery of the drug paraphernalia (the glass pipe), the officers had probable cause to arrest Contreras and to search his truck. *See Lopez v. State,*

223 S.W.3d 408, 411-14 (Tex. App.—Amarillo 2006, no pet.).

For the above reasons, we conclude that the trial court did not err in denying Contreras's motion to suppress. We overrule issue one in each case.

## Judgment Corrections

In issues two, three, and four, Contreras complaints that the judgment in each case does not accurately state the section of either the Health and Safety Code or the Penal Code for the offense that he was convicted of. A judgment must contain the "offense or offenses for which the defendant was convicted." TEX. CODE CRIM. PROC. ANN. art. 42.01, § 1(13) (West Supp. 2015).

In cause number 38209CR (possession of marijuana (five pounds or less but more than four ounces)), Contreras asserts that the judgment should more accurately recite that he was convicted of section 481.121(a) and (b)(3) of the Health and Safety Code, rather than just section 481.121(b)(3), as recited in the judgment. The State responds that the code section cited in the judgment identifies the proper punishment level for the offense and also identifies the proper offense because section 481.121 only involves possession of marijuana, but the State adds that it has no objection to the requested modification of the judgment. Accordingly, we sustain issue two and modify the judgment in cause number 38209CR to reflect a conviction of the offense in Health and Safety Code section 481.121(a), (b)(3). As modified, the judgment is affirmed.

In cause number 38210CR (unlawful possession of a firearm by a felon), Contreras asserts that the judgment should be corrected from Penal Code section 46.04(a) to section 46.04(a)(1). The State responds that an examination of the indictment shows that

Contreras was actually convicted under section 46.04(a)(2), not section 46.04(a)(1). The State maintains that section 46.04(a) is not incorrect, but if the judgment is corrected, it should be corrected to reflect a conviction of the offense in section 46.04(a)(2). Accordingly, we sustain issue three and modify the judgment in cause number 38210CR to reflect a conviction of the offense in Penal Code section 46.04(a)(2). As modified, the judgment is affirmed.

In cause number 38211CR (possession of a controlled substance (methamphetamine, in an amount of four grams or more but less than 200 grams)), Contreras seeks correction of the judgment to reflect a conviction for sections 481.115(a), (d) and 481.102(6) of the Health and Safety Code, rather than only section 481.115(d) as recited in the judgment. The State has no objection to this requested modification. Accordingly, we sustain issue four and modify the judgment in cause number 38211CR to reflect a conviction of the offense in Health and Safety Code sections 481.115(a), (d), and 481.102(6). As modified, the judgment is affirmed.

REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed as modified
Opinion delivered and filed August 10, 2016
Do not publish
[CR25]

