**Reversed and Remanded and Opinion filed December 8, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-21-00412-CR

**JAMIN KIDRON STOCKER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1585987**

### O P I N I O N

Appellant Jamin Kidron Stocker appeals his conviction for capital murder. Among other issues, he complains of the sufficiency of the evidence to support his conviction, as well as the trial court's denial of his motion to suppress evidence obtained from his cell phone and his wireless carrier.

We hold that legally sufficient evidence supports the jury's guilty verdict. However, we agree with appellant that the trial court erred in refusing to suppress evidence obtained from his cell phone. Although the State secured the evidence

pursuant to a warrant, we conclude that the supporting affidavits failed to articulate sufficient probable cause. Because we also conclude that the erroneous admission harmed appellant, we reverse the trial court's judgment and remand for a new trial. We overrule appellant's remaining issues.

## Background

In August 2017, Brent Tapp was living in a homeless encampment near downtown Houston. Late at night on August 21, Tapp was shot in the leg. The shot came from the balcony of a nearby townhouse. Tapp and his friend, Trampus Edwards, told responding law enforcement officers that they knew the shooter and that he lived in the townhouse. Tapp and Edwards did not know the shooter's name but identified the balcony of the unit in which they believed he resided. A witness at trial estimated that the townhouse was less than fifty yards away from where Tapp was shot.

The officers conducted a computerized search for the townhouse's address, and the result showed that appellant's name was "associated" with the address.[1] Police showed Tapp a photo of appellant, and Tapp confirmed that appellant was the man who shot him.

The police obtained and attempted to execute an arrest warrant for appellant. An officer called appellant, who said that he was not present at the townhouse. Officers entered the unit, found no one there, and seized a large number of guns and ammunition. Police did not arrest appellant at that time because they could not locate him.

A few months later, on November 7, 2017, police again responded to a call originating from the homeless camp. Tapp had been shot three times and died as a

_____
[1] Appellant did not own or rent the townhouse but, in layman's terms, was a "squatter."

2

result of his injuries. The medical examiner recovered a bullet from Tapp's body, and police matched it to a gun known to belong to appellant.

Appellant was arrested in January 2018. A Harris County grand jury indicted him on a charge of capital murder. Appellant pleaded not guilty. Prior to trial, appellant moved to suppress evidence recovered from his cell phone, which police seized during his arrest, as well as cell site location information obtained from appellant's wireless carrier, T-Mobile, which showed appellant's general movements from April 2015 to January 2018. After a hearing, the trial court denied appellant's motions to suppress. A jury found appellant guilty of capital murder as charged in the indictment. The State did not seek the death penalty, and the trial court sentenced appellant to life imprisonment.

## Analysis

Appellant presents six issues for our review:

1. The trial court erred in denying appellant's motion to suppress evidence seized, along with the fruits of that evidence, from his residence without a search warrant.

2. The trial court erred in denying appellant's motion to suppress the Samsung cell phone.

3. The trial court erred in overruling appellant's motion to suppress evidence obtained from the Samsung cell phone.

4. The trial court erred in denying appellant's motion to suppress T-Mobile carrier information from appellant's Samsung cell phone.

5. The evidence is legally insufficient to support appellant's conviction for capital murder.

6. The trial court abused its discretion in admitting substantial evidence of the extraneous aggravated assault case over objection.

3

## A.    Sufficiency of the Evidence

We begin with appellant's fifth issue, in which he challenges the sufficiency of the evidence supporting the jury's verdict.  We address this issue first because, if appellant is correct, he would be entitled to the greatest relief.  *See Finley v. State*, 529 S.W.3d 198, 202 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

### 1.    Standard of review and applicable law

Appellant was charged with committing the offense of capital murder.  A person commits the offense of murder if he intentionally or knowingly causes the death of an individual.  Tex. Penal Code § 19.02(b)(1).  A person commits the offense of capital murder if the person commits murder as defined under section 19.02(b)(1) and, relevant here, the person intentionally commits the murder in the course of committing or attempting to commit obstruction or retaliation.  *Id.* § 19.03(a)(2).  A person commits the offense of obstruction or retaliation if the person intentionally or knowingly harms or threatens to harm another by an unlawful act:

> (1) in retaliation for or on account of the service or status of another as a:
>> (A) public servant, witness, prospective witness, or informant; or
>>
>> (B) person who has reported or who the actor knows intends to report the occurrence of a crime; or
>
> (2) to prevent or delay the service of another as a:
>> (A) public servant, witness, prospective witness, or informant; or
>>
>> (B) person who has reported or who the actor knows intends to report the occurrence of a crime.

*Id.* § 36.06(a).  The State must prove beyond a reasonable doubt that the defendant is the person who committed the charged offense.  *Johnson v. State*, 673 S.W.2d

4

190, 196 (Tex. Crim. App. 1984); *Bradley v. State*, 359 S.W.3d 912, 916 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

In determining whether the evidence is legally sufficient to support a conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *see also Braughton v. State*, 569 S.W.3d 592, 607-08 (Tex. Crim. App. 2018). We presume that the jury resolved conflicting inferences in favor of the verdict, and we defer to its determination of the evidentiary weight and witness credibility. *See Braughton*, 569 S.W.3d at 608; *Criff v. State*, 438 S.W.3d 134, 136-37 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). The scope of our review includes all the evidence admitted at trial, whether it was properly or improperly admitted. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *See Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper*, 214 S.W.3d at 13.

2.    Legally sufficient evidence supports the jury's verdict.

We need only address the sufficiency of the evidence as it pertains to the identity element of the State's case because appellant does not challenge any other

5

element.[2]  *See, e.g.*, *Murray v. State*, 457 S.W.3d 446, 448 n.1 (Tex. Crim. App. 2015).

On the night of the August shooting, Edwards heard Tapp yelling, "I been shot, I been shot." Edwards asked Tapp who shot him, and Tapp said, "the guy in the townhouse." Edwards did not know who Tapp meant, so he asked Tapp "to show [him]." Tapp pointed to the second-floor balcony of a nearby townhouse. Tapp described the shooter to Edwards, who recognized Tapp's description. Edwards did not know the shooter's name, but he "always see him coming and going. That's how [Edwards] knew who [Tapp] was talking about." At trial, Edwards identified appellant as the man he had seen "coming and going."

Edwards called 911 to report Tapp's injury because Tapp needed an ambulance. Houston Police Department ("HPD") officers, Sergeant Samuel Harris and Officer Kerry Clopton, were dispatched to the scene. Sergeant Harris was unsure if there was an "active shooter" inside the townhouse, so another police unit set up a perimeter to secure the area. Sergeant Harris contacted the HPD Command Center and gave them the suspected shooter's address. The center ran a search and "gave [Sergeant Harris] a name," and he was then able to obtain appellant's driver's license photograph. Sergeant Harris showed the photograph to Tapp, who "was adamant that's [] the person that shot him."

Officer Clopton obtained an arrest warrant for appellant based on a charge of aggravated assault with a deadly weapon. A SWAT unit entered the townhouse but did not find anyone inside. Sergeant Harris then entered and took into evidence at least five firearms, including "a rifle with a homemade silencer put on

---

[2] In his brief, appellant asserts, "The dispute concerning the jury's decision in this matter has to do with the lack of evidence supporting a finding that Appellant was the shooter."

it with a scope on it," and hundreds of unfired ammunition rounds. Sergeant Harris also took into evidence appellant's driver's license and passport.

Ryan Hookano was the firearms examiner in the firearms section of the Houston Forensic Science Center. Hookano examined two bullet fragments that were recovered from the hospital where Tapp received treatment after the August shooting. According to Hookano, they were consistent with being fired from a 22-caliber gun. The rifle with the homemade silencer that was recovered from the townhouse was a 22-caliber semi-automatic rifle. However, Hookano could not determine conclusively whether the fragments had been fired from that specific rifle.

After the shooting, appellant left Texas and traveled to Georgia, where he stayed for approximately seven weeks. Appellant texted his friends, saying that he had to leave Texas because he shot a homeless man and the police were looking for him. Appellant returned to Houston in late October 2017.[3]

On the night of November 7, 2017, HPD received several 911 calls reporting gunshots near the homeless encampment. HPD officers and Houston Fire Department personnel responded to the scene, where they discovered Tapp's body. The emergency responders pronounced Tapp dead. The medical examiner took Tapp's body for examination.

---

[3] Appellant challenges the admission of evidence showing his general whereabouts, as well as the admission of evidence recovered from his phone, such as the text messages discussed here. We address appellant's evidentiary challenges in the next section, but for purposes of our legal sufficiency analysis, we consider all evidence presented at trial, whether properly or improperly admitted. *See Clayton*, 235 S.W.3d at 778.

The medical examiner testified that Tapp had been shot twice in the torso and once in the thigh.[4] The upper body gunshot wounds were fatal injuries that caused Tapp to die from "high volume rapid loss of blood."

The day after the murder, appellant searched for and read (on his cell phone) news articles regarding Tapp's murder. In subsequent weeks, appellant also researched the status of his outstanding warrant and how to "delete [] location history."

Appellant was arrested in January 2018 on the aggravated assault warrant relating to the August shooting. At the time of appellant's arrest, he had a 45-caliber Beretta pistol tucked in his waistband. Kaitlyn Bongiorno, a firearms examiner for the Houston Forensic Science Center, test-fired the Beretta and compared its test-fired bullets with bullets recovered from the ground near the scene of the November 2017 shooting and a bullet recovered from Tapp's body during the autopsy. In Bongiorno's opinion, the Beretta fired the crime-scene bullets and the bullet lodged in Tapp's body that caused his death:

> [Prosecutor:] So this Beretta . . . is essentially the murder weapon for this case?
>
> [Bongiorno:] That is correct.

Not only was appellant arrested with the Beretta that was determined to be the murder weapon, but the State further proved that appellant owned the gun prior to the November shooting. HPD Officer Arturo Garcia testified about arresting appellant in 2016 on an unrelated warrant. Officer Garcia seized two pistols from the trunk of a car appellant was driving. One was a 9-milimeter Luger semiautomatic pistol and the other one was the 45-caliber Beretta later used to

---

[4] Edwards testified that he heard three shots on the night of the November shooting, although he admitted that he did not personally witness Tapp being shot.

shoot and kill Tapp.  Officer Michael Harp, who was also present during the arrest, testified that, "[w]hen asked about the weapons that were found in the car, [appellant] told [Officer Harp] that he had received them from family members. . . .  They were his guns."  In fact, in June 2017, appellant sought a court order compelling HPD to return his weapons.  A judge signed an order, and HPD returned the two guns, including the Beretta, to appellant.

The State also introduced evidence of cell site location information obtained from appellant's wireless carrier and called a witness, HPD Officer Eric Powell, to explain to the jury appellant's movements based on the carrier's location data at and around the time of the November shooting.[5]  Officer Powell testified that HPD obtained T-Mobile records showing the general location of appellant's phone in relation to the nearest T-Mobile cell tower for a period of time shortly before and a few days after the November shooting.  According to Officer Powell, appellant's phone was near the townhouse and crime scene on the morning of November 7 but then travelled several miles southwest before "go[ing] dark" for the rest of the day and night.  On the afternoon of November 8, appellant's phone re-joined the network, again in the general vicinity of the townhouse and crime scene.  T-Mobile did not have any location data for appellant's phone on the night of the murder.  In Officer Powell's experience, it is "not common" to see a gap like that, and he agreed that criminals "who don't want to get caught . . . know to turn their phone off or kind of disappear from the grid."

Viewed in the light most favorable to the jury's verdict, we hold that the evidence is legally sufficient to prove beyond a reasonable doubt that appellant was the person who shot and killed Tapp in November 2017.  *See, e.g.*, *Lugo v.*

---

[5] Officer Powell also placed appellant at the scene of the August shooting, which corroborates Tapp's positive identification of appellant as the shooter in August.

9

*State*, 299 S.W.3d 445, 452 (Tex. App.—Fort Worth 2009, pet. ref'd) (among other evidence, evidence that bullet that killed decedent was a .38 caliber bullet and witness's testimony that she had seen appellant carry a .38 revolver supported jury's verdict); *Johnson v. State*, No. 05-05-01237-CR, 2006 WL 3350780, at *3 (Tex. App.—Dallas Nov. 20, 2006, no pet.) (mem. op., not designated for publication) (among other evidence, forensic evidence matching the bullet from victim's body as well as another bullet and two cartridge casings found at the scene of the murders to the .9mm Luger in appellant's possession at the time of his arrest was sufficient to support conviction for capital murder); *Saxer v. State*, 115 S.W.3d 765, 770-72 (Tex. App.—Beaumont 2003, pet. ref'd) (among other evidence, forensic evidence matching bullet recovered ten feet from victim's body to gun allegedly belonging to appellant supported jury's verdict).

We overrule appellant's fifth issue.

## B. Motions to Suppress

When law enforcement sought to execute an arrest warrant at the townhouse after the August shooting, officials seized several incriminating items, including several guns and ammunition. When police ultimately arrested appellant in January 2018, they seized his Samsung mobile phone. Law enforcement obtained a search warrant to search the device, and three separate search warrants to be served on T-Mobile, appellant's wireless carrier. A search of the phone produced appellant's texts and browser history; and documents received from T-Mobile revealed the general location of appellant's Samsung phone at various times. Appellant filed motions to suppress the fruits of these searches and seizures, which the trial court denied. We summarized some of this evidence above as it pertains to appellant's legal sufficiency challenge to the identity element.

10

In his third and fourth issues, appellant challenges the trial court's denial of his motions to suppress the Samsung phone evidence and T-Mobile evidence obtained pursuant to the warrants. Appellant argues that the searches of his phone's contents and of the wireless carrier's cell site location information were not supported by probable cause, contrary to the Fourth Amendment and Texas Constitution, article I, section 9. In his first issue, appellant challenges the denial of his motion to suppress the evidence seized from the townhouse in August on the ground that law enforcement had no search warrant. We begin with appellant's complaint regarding the contents of the Samsung phone.

1.     Standard of review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex. Crim. App. 2018). We review the trial court's factual findings for an abuse of discretion but review the trial court's application of the law to the facts de novo. *Id.* Our deferential review of the trial court's factual determinations also applies to the trial court's conclusions regarding mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We review mixed questions of law and fact that do not turn on credibility and demeanor, as well as purely legal questions, de novo. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

2.     Probable cause generally

The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *See* U.S. Const. amend. IV. Probable cause exists for Fourth Amendment purposes when, "under

11

the totality of the circumstances, there is a fair probability or substantial chance that contraband or evidence of a crime will be found at the specified location." *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013); *see also State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012); *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). In other words, there must be "a sufficient nexus between criminal activity, the things to be seized, and the place to be searched." *Bonds*, 403 S.W.3d at 873.

When reviewing a magistrate's decision to issue a warrant, appellate courts apply a highly deferential standard of review because of the constitutional preference for searches conducted pursuant to a warrant over warrantless searches. *State v. McLain*, 337 S.W.3d 268, 271-72 (Tex. Crim. App. 2011). This is a flexible, non-demanding standard. *Duarte*, 389 S.W.3d at 354. The duty of reviewing courts is to ensure a magistrate had a substantial basis for concluding that probable cause existed. *Id.* Reviewing courts must give great deference to a magistrate's probable cause determination, including a magistrate's implicit finding. *McLain*, 337 S.W.3d at 271-72. Even in close cases, reviewing courts give great deference to a magistrate's probable cause determination to encourage police officers to use the warrant process. *Duarte*, 389 S.W.3d at 354. When in doubt, reviewing courts should defer to all reasonable inferences a magistrate could have made. *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). Reviewing courts should not invalidate a warrant by interpreting an affidavit in a hyper-technical rather than commonsense manner. *Id.* at 61 n.25; *McLain*, 337 S.W.3d at 271-72. In determining whether an affidavit provides probable cause to support a search warrant, an issuing court and a reviewing court are constrained to the four corners of the affidavit. *McLain*, 337 S.W.3d at 271-72.

12

### 3. The Samsung phone

Under the Fourth Amendment, law enforcement may not embark on "a general, evidence-gathering search" of a cell phone for personal information. *See State v. Granville*, 423 S.W.3d 399, 412 (Tex. Crim. App. 2014); *see also Butler v. State*, 459 S.W.3d 595, 601 n.3 (Tex. Crim. App. 2015) (acknowledging that both the United States Supreme Court and the Texas Court of Criminal Appeals have recognized that cell phone users have a reasonable expectation of privacy in content of their cell phones). Searches of a cellular telephone or other wireless communications device under Texas law are governed by a specific provision of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 18.0215. To search a person's cell phone after a lawful arrest, a peace officer must submit an application for a warrant to a magistrate. *Id.* art. 18.0215(a). The application must "state the facts and circumstances that provide the applicant with probable cause to believe that (A) criminal activity has been, is, or will be committed; and (B) searching the telephone or device is likely to produce evidence in the investigation of the criminal activity described in Paragraph (A)." *Id.* art. 18.0215(c)(5); *see also State v. Baldwin*, ---S.W.3d---, 2022 WL 1499508, at *8 (Tex. Crim. App. 2022). As this court has also stated, an affidavit offered in support of a warrant to search cell phone contents must usually include facts that a cell phone was used during the crime or shortly before or after. *Diaz v. State*, 604 S.W.3d 595, 603 (Tex. App.—Houston [14th Dist.] 2020), *aff'd*, 632 S.W.3d 889 (Tex. Crim. App. 2021) (citing *Walker v. State*, 494 S.W.3d 905, 908-09 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Humaran v. State*, 478 S.W.3d 887, 893-94 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd)).

A probable cause affidavit supporting a cell phone search must contain evidence of the requisite nexus with more than mere conclusory allegations. For

13

example, the Court of Criminal Appeals recently held that generic, boilerplate language about cell phone use among criminals is not alone sufficient to establish probable cause to search a cell phone. *Baldwin*, 2022 WL 1499508, at *11. The court explained:

> Instead, specific facts connecting the items to be searched to the alleged offense are required for the magistrate to reasonably determine probable cause. To hold otherwise would condone the search of a phone merely because a person is suspected to have committed a crime with another person. Put another way, all parties suspected of participating in an offense would be subject to having their cell phones searched, not because they used their phones to commit the crime, but merely because they owned cell phones.

*Id.* In *Baldwin*, the court held that an insufficient factual nexus existed to search the suspect's cell phone when the affidavit supporting the search warrant set forth merely the officer's generalized belief, based on his experience and training, that suspects plan crimes using their phones.[6]

We will presume without deciding that the seizure of appellant's phone was lawful and, in so presuming, we do not reach the merits of appellant's second issue. We proceed to appellant's third issue and consider whether the subsequent

---

[6] In *Baldwin*, the affidavit provided, in relevant part:

> Additionally, based on your Affiant's training and experience, Affiant knows from other cases he has investigated and from training and experiences that it is common for suspects to communicate about their plans via text messaging, phone calls, or through other communication applications. Further, Affiant knows from training and experiences that someone who commits the offense of aggravated assault or murder often makes phone calls and/or text messages immediately prior and after the crime.

*Baldwin*, 2022 WL 1499508, at *4.

14

search of the cell phone's contents was permissible under the Fourth Amendment.[7] We conclude it was not.

In today's case, the probable cause affidavit supporting the warrant to search the Samsung phone stated:

> Your Affiant has been a law enforcement officer for approximately 21 years, and has experience in investigating crimes where cellular phones and social media have been used to commit offenses. Your Affiant knows from training and experience that individuals engaged in criminal activities and the flight therefrom, often use cell phones and social media to communicate. Your affiant is requesting a search warrant be issued to "download" Jamin Stocker's cellular phone in an attempt to discover any electronic data, including deleted data, associated with the shooting of . . . the victim related to the aggravated assault he was charged in.

The remainder of the affidavit contains nothing about a cell phone being used before, during, or after the charged offense. In fact, the affidavit does not mention the offense of capital murder. The offenses described in the affidavit are those for which appellant was not tried and convicted here. There simply are no facts within the four corners of the affidavit that tie appellant's Samsung phone to any offense, much less the charged offense of capital murder.

The affidavit in today's case is notably weaker than the one considered and rejected in *Baldwin*. Considering the four corners of the document, we conclude that the affidavit contains insufficient particularized facts to have allowed the magistrate to determine probable cause for a warrant to search appellant's Samsung phone for two reasons: (1) the affidavit does not describe the murder, and (2) it presents no factual nexus between the phone and the murder. *See Baldwin*, 2022 WL 1499508, at *11-12. It is difficult to see how the affidavit

---

[7] Appellant had a legitimate expectation of privacy in the contents of his cell phone. *See Granville*, 423 S.W.3d at 408.

could sufficiently articulate a factual nexus between the Samsung phone and the criminal activity described in the affidavit when the affidavit does not describe the criminal activity at issue—the November capital murder. Moreover, the affidavit does not contain any facts suggesting that appellant used his phone during the crime or shortly before or after. *See Diaz*, 604 S.W.3d at 603. The trial court erred in denying appellant's motion to suppress the evidence obtained from the search of appellant's Samsung phone.

    4.    The erroneous admission of the Samsung phone evidence harmed appellant.

We next consider whether the trial court's error in admitting the Samsung phone evidence harmed appellant. Because the error implicates the right to be free of unreasonable searches under the U.S. Constitution, we must conduct a constitutional harm analysis. *See Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). We must reverse unless we determine beyond a reasonable doubt that the error did not "contribute" to appellant's conviction or punishment. *See* Tex. R. App. P. 44.2(a); *Wells v. State*, 611 S.W.3d 396, 410 (Tex. Crim. App. 2020). Accordingly, we focus "not upon the perceived accuracy of the conviction or punishment, but upon the error itself in the context of the trial as a whole, in order to determine the likelihood that it genuinely corrupted the fact-finding process." *Snowden v. State*, 353 S.W.3d 815, 819 (Tex. Crim. App. 2011). We do not consider "'whether the jury verdict was supported by the evidence,'" but rather the question is the likelihood that the constitutional error was actually "'a contributing factor in the jury's deliberations in arriving at that verdict.'" *Wells*, 611 S.W.3d at 410 (quoting *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007)). We are to calculate as much as possible the probable impact of the error on the jury in light of the existence of other evidence. *Id.* A ruling that an error is

16

harmless is, in essence, an assertion that the error could not have affected the jury. *Id.*

In making this determination, factors to consider include the nature of the error (e.g., erroneous admission or exclusion of evidence, objectionable jury argument, etc.), whether the error was emphasized by the State, the probable implications of the error, and the weight the jury would likely have assigned to the error in the course of its deliberations. *Wells*, 611 S.W.3d at 410 (citing *Snowden*, 353 S.W.3d at 822). This list is not exhaustive, and the reviewing court must take into account any and every circumstance apparent in the record that logically informs an appellate determination whether "'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment.'" *Snowden*, 353 S.W.3d at 822 (quoting Tex. R. App. P. 44.2(a)).

### a. The evidence

The State introduced several exhibits containing evidence downloaded from appellant's phone and also called an HPD officer, Detective Sergeant Michael Burrow, to discuss the relevance of the proffered exhibits. The State introduced the following evidence recovered from appellant's phone (1) between the August and November shootings, and (2) between the November shooting and appellant's arrest in January 2018:

*First Period*

- text messages, in which appellant said, "I ended up having to shoot a guy and I had to leave Texas for awhile. . . . Cops looking for me. . . . Laws still looking 4 me. . . . They had my picture on the news. . . . Had to shoot a guy. . . ."
- Internet history showing that appellant researched "fugitives crossing state lines."

17

- Internet history showing that appellant read news articles about the August shooting and articles about appellant being a wanted fugitive.

- Internet history showing that appellant researched how to "get gun residue off hands" and how to "alter fingerprints temporarily."

- Internet history showing that appellant researched the judge and personnel at the court to which the August aggravated assault charge was assigned, as well as the status of the case.

- Internet history showing "a lot of searches on SWAT," including searches of specific SWAT officers.

*Second Period*

- Internet history showing that appellant searched for and read news articles regarding Tapp's murder, including an article written the day after the November shooting titled "Man Found Shot Dead Near Southwest Freeway," and that appellant searched for information regarding the HPD Criminal Apprehension Team.

- Internet history showing that appellant searched his warrant status one month after the shooting.

- Internet history showing that appellant searched how to "delete your location history."

b.    Application

The nature of the error was the erroneous admission of evidence from the Samsung phone.   Much of the evidence recovered from appellant's phone corroborated his role as the shooter in August (and his subsequent flight from the scene), which was never seriously in dispute, and thus the evidence has little additional probative value as to that issue.   But the State also sought to prove the underlying crime of retaliation or obstruction, and the evidence obtained from his phone was highly probative of that offense and necessary to convict appellant of capital murder.   *See* Tex. Penal Code §§ 19.03(a)(2), 36.06(a).   The State pointed to the evidence that appellant knew that law enforcement considered him a suspect in the August shooting, as grounds to argue that appellant knew Tapp's status as a

18

prospective witness and that appellant had a motive to later kill or "silence" Tapp. Sergeant Burrow testified that the evidence was significant to HPD's investigation: "He knew that Brent had reported to the police and knew [Tapp] was a witness in the case and [appellant] knew the charges had been filed."

The cell phone evidence also strengthened the State's theory that appellant was the November shooter. The evidence that appellant searched news articles of Tapp's murder the day after the shooting—when considered along with the properly admitted[8] location data from T-Mobile placing appellant near the crime scene on the morning of and the day after the shooting and the purportedly deliberate absence of location data on the night of the shooting—was important to the State's case. One of the key disputes was identity—there was no eyewitness to the November shooting, and so the State needed to connect appellant to the shooting with as much circumstantial evidence as possible. To be sure, the fact that a bullet recovered from Tapp's body matched a gun owned by appellant was significant in tying appellant to the crime. But the cell phone evidence also showed that appellant was searching for news coverage of the shooting, giving rise to an inference that he was gauging whether police knew of his involvement. Sergeant Burrow testified that appellant's search for news articles stood out to him because "the victim is not identified in that shooting. . . . So it's an ambiguous story that's not really flashy or high profile, yet [appellant] searched for it and saved it in his phone."

The cell phone evidence was not cumulative of other evidence. The State did not present other evidence that appellant was concerned about law enforcement's suspicion of his role in both the August and November shootings. The State relied on the phone to demonstrate appellant's attempts to hide or

---

[8] *See infra* Part B.5.

destroy inculpatory evidence, as indicated by his Internet searches for how to remove gun residue, how to alter his fingerprints, and how to delete his location history, none of which was shown through other means.

The State emphasized the importance of the Samsung phone evidence during closing arguments:

> And what does he do immediately after? I mean immediately after? He goes to sleep and then he immediately begins researching news articles about a man fatally shot near a homeless camp under the Southwest Freeway. Pretty odd thing to look up.
>
> First thing you do when you wake up, first thing you do when you get onto your phone is search for things like that. The only way he's searching for it is because he knows it's happened. How does he know it's happened? Because he's the one who did it.
>
> There's no communications on his phone either in the records themselves or the phone device itself, there is none of it. The reason he needed to look for those things is because he was the one out there killing Brent that night. It's the only reason it's there. It's the only reason he's doing it. It's not a guess, it's not speculation, it's a fact.

The overall strength of the State's case, absent the cell phone evidence, was fairly strong. The facts that appellant previously shot Tapp at the same location and that a recovered bullet matched appellant's gun constituted strong evidence of guilt. But the State needed to prove not only that appellant was the culprit, but also that he committed the offense in retaliation or obstruction. *See* Tex. Penal Code §§ 19.03(a)(2), 36.06(a). The State's reliance on the cell phone evidence to prove that element is clear from closing arguments: "Then there's some more here [in the jury charge] about you have a reasonable doubt to whether he committed any offense, it's a not guilty. Sure. You should not have any reasonable doubt. This was Jamin Stocker. *You saw his phone*, you saw his phone location data, you saw that it came from his 45." (Emphasis added). The State's repeated emphasis

20

on the erroneously admitted evidence weighs in favor of a finding of harm. *See Snowden*, 353 S.W.3d at 822.

The implication of the error is that the jury heard, in appellant's own words despite not testifying, that he admitted to shooting Tapp in August and that he was concerned about the warrant for his arrest. Suppressing the evidence pertaining to appellant's alleged retaliation motive would have vitiated a central argument made by the State relating to appellant's motive, and thus this evidence weighs in favor of a finding of harm. *See Chung v. State*, 475 S.W.3d 378, 389 (Tex. App.—Waco 2014, pet. ref'd) (error in admitting evidence, which supported State's "central argument" at punishment, was harmful).

The jury likely placed great weight upon the cell phone evidence, especially in conjunction with the ballistics evidence from the November shooting, in reaching its ultimate finding that appellant was guilty of capital murder. The State presented the evidence through three exhibits, comprising nearly sixty pages, and through the testimony of Sergeant Burrows, who was the State's last witness before resting and who testified for most of the last day of a four-day trial.

In sum, the cell phone evidence "helped the State paint a clearer picture" of appellant's role in and motive for the November shooting, and that is precisely what the State argued to the jury. *Oliver v. State*, No. 14-13-00957-CR, 2015 WL 1933389, at *7 (Tex. App.—Houston [14th Dist.] Jan. 22, 2015, pet. ref'd) (mem. op., not designated for publication). The cell phone evidence more convincingly connected appellant, as opposed to some other unnamed assailant, to the fatal shooting of Tapp in November 2017. The cell phone evidence was "important in the context of the entire trial." *Id.* (internal quotation omitted).

While the State presented other evidence suggesting appellant's guilt, after viewing the entire record, we cannot determine beyond a reasonable doubt that the

erroneous admission of the cell phone evidence did not contribute to appellant's conviction for capital murder. *See id.* at *8 (erroneous admission of text message connecting appellant, as opposed to another party, to offense—while "not necessarily 'essential'" to the State's case—nonetheless was harmful because of the likely effect it had on jury's deliberations); *Chung*, 475 S.W.3d at 389. We sustain appellant's third issue.

### 5. The cell site location information

Although we are reversing the judgment and remanding the case, we will address appellant's additional evidentiary challenges that would likely arise during a retrial, in the interest of judicial economy and because the parties have briefed them. *See Fox v. State*, 115 S.W.3d 550, 565 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (after holding new trial warranted due to erroneous exclusion of sexual-abuse allegations, court of appeals considered appellant's additional evidentiary complaints that were likely to recur on retrial); *Tissier v. State*, 792 S.W.2d 120, 124-25 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (after remanding for new trial, court of appeals considered appellant's evidentiary admissibility issue that was likely to recur on retrial); *see also Cook v. State*, 940 S.W.2d 623, 627-28 (Tex. Crim. App. 1996) (addressing admissibility of evidence in the event of a retrial); *Ramirez v. State*, 815 S.W.2d 636, 640, 645 (Tex. Crim. App. 1991); *Cuadros-Fernandez v. State*, 316 S.W.3d 645, 658 (Tex. App.—Dallas 2009, no pet.); *Jordan v. State*, 1 S.W.3d 153, 158 (Tex. App.—Waco 1999, pet. ref'd) (remanding for new trial but addressing additional issues likely to arise on retrial).

In his fourth issue, appellant argues that the trial court erred in denying his motion to suppress evidence obtained from T-Mobile regarding the cell site location information associated with appellant's cell phone number.

The United States Supreme Court has made clear: "Before compelling a wireless carrier to turn over a subscriber's [cell-site location information], the Government's obligation is a familiar one—get a warrant" supported by probable cause. *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018). In Texas, searches to obtain electronic customer data held in electronic storage must comply with Code of Criminal Procedure article 18B.354. *See* Tex. Code Crim. Proc. art. 18B.354. To obtain such data from a provider of an electronic communications service, a peace officer must submit an application for a warrant to a district judge. *Id.* art. 18B.354(a). The application must provide "sufficient and substantial facts to establish probable cause that: (1) a specific offense has been committed; and (2) the electronic customer data sought: (A) constitutes evidence of that offense or evidence that a particular person committed that offense; and (B) is held in electronic storage by the service provider on which the warrant is served under Article 18B.355(c)." *Id.* art. 18B.354(b).

The Court of Criminal Appeals recently considered whether cell site location information relevant to a capital murder charge was obtained in violation of Texas Constitution article I, section 9. *Holder v. State*, 595 S.W.3d 691 (Tex. Crim. App. 2020). In *Holder*, the court adopted the Supreme Court's reasoning in *Carpenter* and applied it to article I, section 9. *Id.* at 701. The court ultimately concluded that, to comply with article I, section 9, a search of the defendant's cell site location information had to be supported by probable cause to be reasonable (absent an applicable exception to the warrant requirement). *Id.* at 704. There, the relevant document offered in support of probable cause stated: "[t]he cellular telephone was used by a possible suspect to communicate with unknown persons and obtaining the locations of the handset will allow investigators to identify if this suspect was in the area at the time of the offense and will provide investigators

23

leads in this case." *Id.* at 704 n.27. Notably, the State in *Holder* conceded, and the court agreed, that this assertion was alone insufficient to support a probable cause finding. *Id.* at 704. *Holder* is consistent with the Fourth Amendment probable cause framework, which requires a factual indication or reasonable inference establishing a fair probability or substantial chance that evidence of a crime will be found at the specified location. *E.g.*, *Bonds*, 403 S.W.3d at 873. The supporting document in *Holder* articulated an intent to conduct a search more akin to general evidence-gathering. But a mere desire to learn the movements or location of a suspect is not sufficient probable cause to obtain cell site location information from a suspect's wireless carrier. There must be some factual basis in the affidavit providing a fair probability that law enforcement could expect to find inculpatory location information evidence from the carrier indicating that a specific person committed a particular offense.

The probable cause affidavit for the warrant to obtain the cell site location information associated with appellant's cell phone number stated:

> I, M. Condon, a peace officer employed by the Houston Police Department do solemnly swear that I have reason to believe and do believe that electronic customer data held in storage by T-Mobile constitutes evidence of the offense of Murder and Aggravated Assault, which is more particularly described as, but not limited to electronic customer data as defined by Texas Code of Criminal Procedure (T.C.C.P) Chapter 18.B and is held in electronic storage by the service provider on which the warrant is served T-Mobile[.] Said information includes any and all addressing and routing information and/or transactional data including any and all location information used while accessing said services and is not limited in scope by company specific nomenclature, relative to [xxx-xxx-xxxx]. . . .

> Affiant also learned during his investigation that the homeless victim shot in the August 22, 2017 aggravated assault that Stocker was identified and charged with was murdered on November 7, 2017 in the same location and about the same time as the original

24

aggravated assault shooting. Affiant learned from the report that firearms evidence (casings and projectile) was recovered at the murder scene and indicated a .45 caliber handgun was used in the murder. Affiant learned from HPD report supplements authored by HPD Homicide Sgt. M. Burrow in report 1408397-17 that Stocker was arrested in February of 2016 with a 9mm and .45 caliber handguns in HPD report #0203922-16. Affiant also learned from the supplements that in June of 2017 Stocker recovered his 9mm and .45 caliber handguns from the HPD property room. Those two handguns were test fired and the test fires were retained by the HPD Ballistics Laboratory. Affiant further learned from ballistics reports that the HPD Ballistics Laboratory compared those test fires with the firearms evidence recovered from the homeless victim murder on November 7, 2017. Affiant learned from the ballistics reports that Stocker's .45 test fires conclusively matched to the firearms evidence recovered from the murder. Further, Affiant learned in Sgt. Burrow's supplements that in January of 2018, Stocker was arrested for a bond violation on the aggravated assault case and the bounty hunter who arrested him found a .45 caliber handgun on his person and turned it in to the Harris County Sheriff's Office Jail while turning Stocker in to the jail. Affiant also learned from the reports that the serial number of the .45 matched the test fires to the physical .45 caliber handgun that Stocker was arrested with. . . .

Your Affiant has been a law enforcement officer for approximately 23 years, and has experience in investigating crimes where cellular phones and social media have been used to commit offenses. Your Affiant knows from training and experience that individuals engaged in criminal activities and the flight therefrom, often use cell phones and social media to communicate, research the crime before, during and after it happens, and use it to flee. Affiant knows from training and experience that individuals engaged in activities described herein often use cellular phones and social media to communicate in furtherance of criminal activity. Affiant knows from past experience as well that cellular phone and internet service providers maintain records - including subscriber information, customer use and account information, call detail information, cell site location information, geo-location information, and internet protocol (IP) logs, as part of their normal course of business.

Based on the aforementioned probable cause, Affiant believes that information will be found within the records maintained by T - Mobile pertaining to identifier cell number [xxx-xxx-xxxx] that constitute evidence of Murder and Aggravated Assault. Affiant believes the phone records will reveal the locations of the phone prior to, during, and after the shooting of the people listed above as well as those people defendant Jamin Stocker communicated with prior to, during, and after the shootings who may [have] information related to the investigation that are unknown to law enforcement. Affiant also believes that the records from Jamin Stocker's phone before, during, and after the shootings can help investigators provide insight into his habits, motives, and intentions which could also provide leads as to the plans in relation to each of the shootings and any flights from the shootings. Therefore Affiant is requesting data for Jamin Stocker's phone between the dates of April 1, 2015 through January 10, 2018.

Considering the four corners of the affidavit, we conclude that it contains sufficient factual assertions from which the district judge could reasonably determine there was a fair probability that the location data relating to appellant's phone would provide evidence of the murder described in the affidavit and that appellant committed the murder. Although the affidavit does contain some conclusory statements, it also includes additional facts establishing the requisite nexus between the murder and the electronic records to be searched. In particular, the affidavit contains facts conclusively linking appellant to the murder weapon—a handgun—thereby connecting appellant to the specific location of the murder. Thus, the facts contained in the affidavit give rise to a fair probability that a search of T-Mobile's cell site location information associated with appellant's phone would reveal inculpatory evidence that a particular person, appellant, committed the murder because the location of his Samsung phone would be placed at or near the murder scene at the relevant time. *See Martinez v. State*, ---S.W.3d---, 2022 WL 3904699, at \*9-10 (Tex. App.—San Antonio Aug. 31, 2022, no pet. h.) (holding magistrate had substantial basis for concluding probable cause existed to

26

support warrant to conduct search historical cell site data for defendant's cell phone); *Bowden v. State*, No. 08-19-00057-CR, 2021 WL 3661163, at *9-10 (Tex. App.—El Paso Aug. 18, 2021, pet. ref'd) (mem. op., not designated for publication) (affidavit included eyewitness account of neighbor who said person matching defendant's description entered the victim's apartment near the time of the murder; sufficient probable cause to obtain T-Mobile records); *Parker v. State*, No. 03-19-00293-CR, 2021 WL 1567882, at *5-6 (Tex. App.—Austin Apr. 22, 2021) (mem. op., not designated for publication), *aff'd*, ---S.W.3d---, 2022 WL 2963533 (Tex. Crim. App. 2022) (affidavit contained sufficient facts connecting defendant to Oregon offense to support probable cause to obtain cell site location records from carrier); *accord, e.g.*, *Carpenter*, 138 S. Ct. at 2218 ("[A] cell phone—almost a feature of human anatomy—tracks nearly exactly the movements of its owner. . . . [People] compulsively carry cell phones with them all the time.") (internal citation and quotation omitted); *Riley v. California*, 573 U.S. 373, 395 (2014) ("Now it is the person who is *not* carrying a cell phone, with all that it contains, who is the exception. According to one poll, nearly three-quarters of smart phone users report being within five feet of their phones most of the time.") (emphasis added). This is sufficient to show "some quantum of individualized suspicion" to justify a search of T-Mobile's location data. *Carpenter*, 138 S. Ct. at 2221 (internal quotation omitted).

We also note that the affidavit is consistent with Texas's statutory requirements because it includes "sufficient and substantial facts" to have allowed the judge to determine probable cause to search T-Mobile's cell site location information associated with appellant's phone number. *See* Tex. Code Crim. Proc. art. 18B.354(b). The affidavit states that a specific offense had been committed, specifically the November 2017 murder. *Id.* art. 18B.354(b)(1). The affidavit

describes the electronic customer data sought, specifically "any and all location information." *Id.* art. 18B.354(b)(2). The affidavit establishes probable cause that the cell site location information would constitute evidence that appellant committed the offense because it contains facts linking appellant to the murder weapon. *Id.* art. 18B.354(b)(2)(A). And finally, the affidavit states that the location data is held in electronic storage by T-Mobile. *Id.* art. 18B.354(b)(2)(B).

The trial court did not err in denying appellant's motion to suppress evidence obtained from the search of T-Mobile's records, and we overrule his fourth issue.

### 6. Evidence seized from the townhouse

In his first issue, appellant argues that the trial court erred in denying his motion to suppress evidence seized from the townhouse following the August shooting. Appellant contends: (1) Officer Clopton's affidavit supporting the August aggravated assault arrest warrant contained a material misstatement and thus lacked probable cause; and (2) entry into the townhouse was "improper as appellant was not present" on the premises.

#### a. Misstatement in the affidavit

An arrest warrant affidavit must provide the magistrate with sufficient information to support an independent determination that probable cause exists for the warrant. *Duarte*, 389 S.W.3d at 354. Probable cause exists when the facts and circumstances within an officer's personal knowledge and of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that, more likely than not, a particular suspect has committed the crime. *Muniz v. State*, 851 S.W.2d 238, 251 (Tex. Crim. App. 1993). The test is whether a reasonable reading of the supporting affidavit provides a substantial

28

basis for the magistrate's conclusion that probable cause existed. *Duarte*, 389 S.W.3d at 354.

A criminal defendant may challenge the truthfulness of factual statements made in a probable cause affidavit. *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978). Under *Franks*, a warrant must be voided—and any evidence obtained pursuant to the warrant suppressed—if (1) the defendant can establish by a preponderance of the evidence that the affidavit supporting the warrant contains a material misstatement that the affiant made knowingly, intentionally, or with reckless disregard for the truth, and (2) excising the false statement, the affidavit's remaining content is insufficient to establish probable cause. *Id.* at 155-56; *see also Janecka v. State*, 937 S.W.2d 456, 462 (Tex. Crim. App. 1996).

According to appellant, the probable cause affidavit misstated the complainant's last name as "Green" instead of "Tapp." Appellant contends:

> The probable cause statement attested to by Officer Clopton listed the Complainant [for the August shooting] as Brent Green. This was a false statement as his name was Brent Tapp. At the least, this misstatement by Clopton was reckless as he was aware prior to swearing to the statement that his partner, Officer Harris, while with Clopton, had tried to pull up Brent Green [on a computer search] and was unable to do so.

In appellant's view, this misstatement undermined Officer Clopton's assertion in the affidavit that Tapp was reliable and credible.

At the pretrial suppression hearing on this issue, Officer Clopton testified that he did not learn that Tapp had given him a false name until after he had obtained the arrest warrant. Officer Clopton said that, in his experience, it was not uncommon for people to give a false name to police, but that such people may still be credible and reliable, as he considered Tapp to be. Officer Clopton had no reason to doubt Tapp's credibility because Officer Clopton personally observed

that Tapp had suffered a gunshot wound to his leg, which aligned with the events described by Tapp that Clopton included in the probable cause affidavit.

The reliability of the affiant and his sources of information are part of the totality of the circumstances that the magistrate should evaluate in making a probable cause determination. *Johnson v. State*, 803 S.W.2d 272, 289 (Tex. Crim. App. 1990), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991). "[W]here a crime victim, who is a private citizen, reports the commission of a criminal offense, and whose only contact with law enforcement authorities is a result of having been victimized at the hands of another, the credibility and reliability of the information is inherent." *Nelson v. State*, 855 S.W.2d 26, 30 (Tex. App.—El Paso 1993, no pet.). Therefore, in making a probable cause determination, a magistrate is entitled to rely on source information supplied by a victim eyewitness without an independent showing of reliability. *Id.*; *see also Gonzales v. State*, 481 S.W.3d 300, 308 (Tex. App.—San Antonio 2015, no pet.).

As the victim of the reported crime, Tapp was inherently reliable. *Nelson*, 855 S.W.2d at 30. Further, Officer Clopton testified that he was unaware of the inaccuracy in Tapp's last name until after the warrant was signed and issued. The trial court could have reasonably concluded that Officer Clopton did not include the inaccuracy in the affidavit deliberately or with a reckless disregard for the truth. *See Franks*, 438 U.S. at 171-72; *see also Warren v. State*, No. 03-11-00343-CR, 2014 WL 1207986, at *7 (Tex. App.—Austin Mar. 20, 2014, pet. ref'd) (mem. op., not designated for publication) (inclusion of wrong name in affidavit was not made with the type of knowledge, intent, or recklessness contemplated by *Franks*: "In fact, appellant never established that Detective Pergande was aware that his statement concerning the name on the water account was incorrect at the time he

included the statement in his affidavit. Detective Pergande testified that he only found out about the error two days after obtaining the warrant.").[9]

Finally, the misidentification of the complainant as "Brent Green," instead of Brent Tapp, was not material to establish probable cause. It was reasonable for the magistrate to conclude, under the totality of the circumstances presented within the four corners of the affidavit, that there was probable cause to suspect appellant of aggravated assault, despite the complainant providing an incorrect last name to the officer. *Hyland v. State*, 574 S.W.3d 904, 911 (Tex. Crim. App. 2019) (we defer to the magistrate's finding of probable cause if, under the totality of the circumstances, the affidavit shows a substantial basis for the conclusion).

### b.     Not present on premises

In the next part of his first issue, appellant argues that, notwithstanding the legality of the arrest warrant, the search of the townhouse was "improper" because appellant told the hostage negotiator that he was not present on the premises. Appellant does not cite any legal authority for this proposition, but it is well-established that a law enforcement officer who executes an arrest warrant at a private residence must have a reasonable belief that the suspect resides at the place to be entered and have reason to believe that the suspect is present at the time the warrant is executed. *See Payton v. New York*, 445 U.S. 573, 601-05 (1980); *Morgan v. State*, 963 S.W.2d 201, 204 (Tex. App.—Houston [14th Dist.] 1998, no pet.). When executing an arrest warrant, officers may seize evidence in plain view.

---

[9] The Fourth Amendment requires a truthful factual showing when determining probable cause. *See Franks*, 438 U.S. at 164-65. "Truthful," however, does not mean that every fact recited in the affidavit must be precisely accurate, "for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Id.* at 165. Rather, "truthful" in this context means that the information put forth in the affidavit is believed or appropriately accepted by the affiant as true. *Id.*

31

*Jones v. State*, 568 S.W.2d 847, 857 (Tex. Crim. App. 1978) (upholding admission of evidence seized during the execution of an arrest warrant because the arrest warrant authorized entry into the appellant's apartment, the officers' intrusions into the bathroom and bedroom were justified, and the items seized were in plain view in those areas); *Collins v. State*, 462 S.W.3d 617, 622-23 (Tex. App.—Fort Worth 2015, no pet.) (officers were authorized to seize evidence in plain view in the defendant's bedroom while they were executing arrest warrants).

Tapp told responding officers that he had been shot by someone standing on the second-floor balcony of the townhouse. Officer Harris testified that he "had the Command Center run that address. Command Center ran the address [of the townhouse] and they had a name associated to that address," which was appellant's name. HPD officers testified during the suppression hearing that there was a light on in the townhouse and a car parked in the driveway. One of the SWAT officers said that the HPD patrol officers established a perimeter as quickly as possible and, prior to that, "they did not see the suspect flee so [their] assumption is he's still inside." The same SWAT officer admitted that appellant said that he was not present in the townhouse, but the officer explained that SWAT's policy is not to believe such statements: "We've been told many times by suspects on phones that they're not inside and we found out later that they are inside."

Based on these facts, the trial court reasonably could conclude that the officers executing the arrest warrant believed that appellant was inside the townhouse. *See Morgan*, 963 S.W.2d at 204; *see also, e.g.*, *Rice v. State*, No. 01-02-00094-CR, 2003 WL 1342605, at *5 (Tex. App.—Houston [1st Dist.] Mar. 20, 2003, pet. ref'd) (mem. op., not designated for publication) (officers had evidence from public records that suspect lived at the address and were told by two people outside the house that appellant was inside; court held that this was sufficient to

32

provide a reasonable belief that appellant resided at and was present in the house at the time officers executed the warrant).

There being no other challenge to the August search of the townhouse, we hold that the trial court did not err in denying the motion to suppress. We overrule appellant's first issue.[10]

## C. Admission of Evidence

In his sixth issue, appellant argues that the trial court erred in admitting evidence regarding an "extraneous offense"—i.e., the August shooting. Appellant argues that the evidence should have excluded under either Rule 403 or Rule 404 of the Texas Rules of Evidence.

### 1. Standard of review and applicable law

Evidence of a person's crime, wrong, or other act generally is not admissible to prove that person's character in order to show that he acted in conformity therewith when allegedly committing the charged crime. *See* Tex. R. Evid. 404(b); *see also Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); *Montgomery v. State*, 810 S.W.2d 372, 386-88 (Tex. Crim. App. 1990) (op. on reh'g). Evidence of other offenses may, however, be admissible when it is relevant to a fact of consequence in the case. *See* Tex. R. Evid. 404(b)(2); *Montgomery*, 810 S.W.2d at 387-88. For instance, the evidence may be admissible if it tends to establish some elemental fact, such as identity or intent; tends to establish some evidentiary fact, such as motive, opportunity, or preparation, leading inferentially to an elemental fact; or rebuts a defensive theory by showing, e.g., absence of mistake or accident.

---

[10] Because we reject appellant's arguments against the trial court's ruling, we need not address the State's alternative argument that appellant lacked standing to challenge the search. *See Silva v. State*, No. 01-10-00245-CR, 2012 WL 1564541, at *7 (Tex. App.—Houston [1st Dist.] May 3, 2012, pet. ref'd) (mem. op., not designated for publication); Tex. R. App. P. 47.1.

*Montgomery*, 810 S.W.2d at 387-88; *see also* Tex. R. Evid. 404(b). If the trial court determines the offered evidence has relevance apart from or beyond character conformity, it may admit the evidence and instruct the jury the evidence is limited to the specific purpose the proponent advocated. *Prince v. State*, 192 S.W.3d 49, 54 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (citing *Montgomery*, 810 S.W.2d at 387-88).

But even if a trial court determines that evidence of other crimes or wrongs is not barred under Rule 404(b), the trial court must still conduct a Rule 403 balancing test upon proper objection or request before admitting the evidence. *Id.* at 56; *see also Magee v. State*, No. 14-16-00408-CR, 2017 WL 2818229, at *7 (Tex. App.—Houston [14th Dist.] June 29, 2017, pet. ref'd) (mem. op., not designated for publication). Rule 403 authorizes a trial court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. Tex. R. Evid. 403; *Magee*, 2017 WL 2818229, at *7. Here, appellant raised a Rule 403 objection on unfair-prejudice grounds.

Courts should balance the following factors under a Rule 403 analysis: (1) the strength of the evidence in making a fact more or less probable; (2) the potential of the extraneous offense evidence to impress the jury in some irrational but indelible way; (3) the amount of time the proponent needed to develop the evidence; and (4) the strength of the proponent's need for this evidence to prove a fact of consequence. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); *Fuentes v. State*, No. 14-08-00613-CR, 2009 WL 997508, at *5 (Tex. App.—Houston [14th Dist.] Apr. 14, 2009, pet. ref'd) (mem. op., not designated for publication).

Because trial courts are best-suited to make the call on these substantive admissibility questions, an appellate court reviews admissibility rulings under an abuse of discretion standard. *Powell*, 63 S.W.3d at 438. This standard requires an appellate court to uphold a trial court's admissibility ruling when that decision is within the zone of reasonable disagreement. *Id.*

2.      Application

The evidence at issue concerned the August 2017 shooting. Prior to trial, appellant asked the court to limit the State to discussing only the fact that appellant was indicted for the aggravated assault. The State argued in response that it needed the evidence of the August shooting to establish appellant's motive for the November shooting: "There was a witness, prospective witness, that the victim on the ag[gravated] assault who is now deceased goes to everything that this case is about." The prosecutor believed the evidence was necessary so "the jury can understand why it is that the defendant two months later came back and made sure to kill the only witness against him truly in an aggravated assault who identified him as the person who shot him."

We agree with the State that the evidence regarding the August 2017 shooting was admissible under Rule 404(b). Sergeant Harris testified that Tapp was "adamant" that appellant was the person who shot him in the leg in August 2017. Edwards testified that he saw appellant regularly in the area. The record also makes clear that law enforcement spoke to appellant in the immediate aftermath of the shooting, thus establishing Tapp's status as a prospective witness and appellant's knowledge of the same. This evidence speaks to appellant's possible motive or opportunity in later shooting Tapp in November, which leads inferentially to certain elemental facts, namely appellant's identity as the assailant and appellant's intent in committing the offense of murder. *See Colone v. State*,

573 S.W.3d 249, 266 (Tex. Crim. App. 2019) ("Although motive is not an element of murder, it is a circumstance indicative of guilt. A witness's anticipated testimony that the defendant committed a prior offense can provide a motive to kill the witness.") (internal quotation and footnote omitted).

Based on the record before us, we find that the trial court could have reasonably concluded the extraneous offense evidence was not offered solely for character conformity purposes, but was offered to show a material, nonpropensity issue. *See Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (admission of evidence under Rule 404(b) is generally within the zone of reasonable disagreement and not an abuse of discretion if there is evidence supporting that an extraneous offense is relevant to a material, nonpropensity issue).

Next, we address whether the probative value of the extraneous offense evidence was substantially outweighed by the danger of unfair prejudice. Here, the evidence of the August shooting was highly probative as it was relevant to show the contextual background of the November murder. The first factor thus favors admission. In regard to the second factor, there is nothing in the record or about the nature of the extraneous offense that would indicate the evidence had the potential to impress the jury in an irrational and indelible way. The second factor also favors admission. As to the third factor, the time needed to develop the evidence, we note that the State presented twenty-one witnesses during its case-in-chief, nine of whom testified about the August shooting and the immediate aftermath. While not insignificant, this is not an overwhelming amount of trial time or number of witnesses. At best to appellant's perspective, this factor is neutral. Lastly, because appellant's identity was a contested issue at trial and because there were no eyewitnesses to the November shooting, the evidence of the

August shooting was at least helpful if not necessary to explain the contextual background of both shootings, to show that appellant was regularly in the vicinity, and to establish appellant's motive. The trial court could have concluded that the State's need for the extraneous offense evidence was great, and thus the fourth factor weighs in favor of admissibility. *See, e.g.*, *Colone*, 573 S.W.3d at 267-68 (evidence of prior assault was relevant to show motive, did not require an inordinate amount of trial time, and was necessary for State to link appellant to murder since appellant wore a mask during charged offense).

We conclude the trial court did not abuse its discretion in determining that the probative value of the extraneous offense evidence was not substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403; *De La Paz v. State*, 279 S.W.3d 336, 344, 349 (Tex. Crim. App. 2009). We overrule appellant's sixth issue.

## Conclusion

We reverse the trial court's judgment and remand for a new trial.

/s/    Kevin Jewell
        Justice

Panel consists of Justices Jewell, Bourliot, and Zimmerer.

Publish — Tex. R. App. P. 47.2(b).